STATE v. JAMES H. GREGORY.

(Filed 16 November, 1932.)

1. **Criminal Law E d—Solicitor's statement before trial that State would not ask for conviction of highest degree is equal to nol. pros. thereon.**

In a prosecution for homicide an announcement by the solicitor before entering upon the trial that the State would not ask for a verdict of more than murder in the second degree is tantamount to taking a *nolle prosequi* or accepting an acquittal on the capital charge.

**2. Homicide G c—Held: proper foundation was laid for dying declarations.**

In this case held: proper foundation was laid for introduction of dying declarations of deceased.

**3. Homicide G b—Under the evidence in this case held: instruction that killing was presumed to be murder in second degree was error.**

Although an intentional killing with a deadly weapon raises a presumption that the crime was murder in the second degree, nothing else appearing, yet where the presumption therefrom has been rebutted, from the whole evidence it is the duty of the court to instruct the jury that they should not bring in a verdict of more than manslaughter; in this case there was no evidence that the killing was intentional, and there was competent testimony of dying declarations of the deceased that the killing was accidental: *Held,* an instruction that the killing was presumed to be murder in the second degree is reversible error.

APPEAL by defendant from *Shaw, Emergency Judge,* at June Term, 1932, of GUILFORD.

Criminal prosecution tried upon an indictment charging the defendant with the murder of his son, Tyro Gregory.

When the case was called for trial, the solicitor announced that the State would not insist upon a verdict of murder in the first degree, but would ask for a verdict of murder in the second degree or manslaughter as the evidence might disclose.

The record discloses that in consequence of a telephone call, the sheriff of Guilford County went to the home of the defendant on 13 July, 1931. He found the defendant in the corner of the yard, "just walking around with some other gentleman." When the sheriff drove up, the defendant came to his car. He seemed to be under the influence of whiskey or a dope of some kind. In answer to the sheriff's inquiry as to what was the trouble, the defendant replied: "I am not going to tell any lie about it. We had some trouble out here and my boy would not mind me and I just went in the house and got my shotgun and got two shells and stepped out on the back porch and told him I was going to be the boss around there and when I went to put the shells in the gun and breech it up the gun went off and killed him, or shot him."

The deceased in a dying declaration stated that his father accidentally shot him "while fooling with an old gun. It was purely accidental." He later repeated, while in the hospital: "I want it understood that it was purely an accident."

The defendant testified that he could not recall his conversation with the sheriff. "It scared me pretty nigh to death when I shot that boy." Tyro had been plowing that day; he had just come in from the field and was sitting on the steps washing his feet; it was about 5:30 or

6 o'clock. "I came out of the door with the gun intending to shoot a rabbit; as I walked down the steps, I put the two shells in the gun, I didn't even look at the boy, not thinking anything, and when I snapped it back it fired and the boy hollered and said he was shot."

The following instruction forms the basis of defendant's 7th exception:

"Where one kills another with a deadly weapon, nothing else appearing, the law presumes that the killing is a case of murder in the second degree, that is, the law presumes that such killing, nothing else appearing, was done with some motive sufficiently bad to make it murder in the second degree, even though the State may not be able to show what the motive was."

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's prison for a period of not less than 2 nor more than 5 years.

The defendant appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Sapp & Sapp for defendant.*

STACY, C. J. The announcement of the solicitor, made before entering upon the trial, that the State would not ask for a verdict of more than murder in the second degree, was tantamount to taking a *nolle prosequi,* or accepting an acquittal, on the capital charge. *S. v. Brigman,* 201 N. C., 793, 161 S. E., 727; *S. v. Spain, ibid.,* 571, 160 S. E., 825; *S. v. Hunt,* 128 N. C., 584, 38 S. E., 473.

The dying declaration of the deceased was admitted only after proper foundation or predicate had been laid for its introduction. *S. v. Beal,* 199 N. C., 278, 154 S. E., 604.

The only serious exception appearing on the record is the 7th, or the one addressed to the court's charge that a killing with a deadly weapon, nothing else appearing, raises a presumption of murder in the second degree. This instruction finds support in the following cases: *S. v. Robinson,* 188 N. C., 784, 125 S. E., 617; *S. v. Benson,* 183 N. C., 795, 111 S. E., 869; *S. v. Fowler,* 151 N. C., 731, 66 S. E., 567; *S. v. Worley,* 141 N. C., 764, 53 S. E., 128; *S. v. Willis,* 63 N. C., 26; *S. v. Haywood,* 61 N. C., 376. But in each of these cases the Court was dealing with an intentional killing and not with one in which the State's evidence suggested an accidental killing, or homicide by misadventure. *S. v. Eldridge,* 197 N. C., 626, 150 S. E., 125.

In *S. v. Quick,* 150 N. C., 820, 64 S. E., 168, it was said that where an intentional killing is admitted or established, the law presumes malice from the use of a deadly weapon, and the defendant is guilty of murder in the second degree, unless he can satisfy the jury of the truth of facts which justify his act or mitigate it to manslaughter. "The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him." This rule has since been uniformly adhered to in indictments for homicide. *S. v. Cox,* 153 N. C., 638, 69 S. E., 419; *S. v. Yates,* 155 N. C., 450, 71 S. E., 317; *S. v. Rowe, ibid.,* 436, 71 S. E., 332; *S. v. Lane,* 166 N. C., 333, 81 S. E., 620; *S. v. Cameron, ibid.,* 379, 81 S. E., 748; *S. v. Pasour,* 183 N. C., 793, 111 S. E., 779; *S. v. Ashburn,* 187 N. C., 717, 122 S. E., 833, and formerly in *S. v. Clark,* 134 N. C., 698, 47 S. E., 36, *S. v. Brittain,* 89 N. C., 481; *S. v. Ellick,* 60 N. C., 450.

Speaking of the presumption which arises from an intentional killing with a deadly weapon, nothing else appearing, *Avery, J.,* delivering the opinion of the Court in *S. v. Miller,* 112 N. C., 878, 17 S. E., 167, said:

"It is true that when the killing with a deadly weapon is proved and admitted, the burden is shifted upon the prisoner, and he must satisfy the jury, if he can do so, from the whole of the testimony, as well that offered for the State as for the defense, that matter relied on to show mitigation or excuse is true. *S. v. Vann,* 82 N. C., 631; *S. v. Willis,* 63 N. C., 26; *S. v. Brittain,* 89 N. C., 481. But when it appears to the judge that in no aspect of the testimony, and under no inference that can be fairly drawn from it, is the prisoner guilty of murder, it is his duty, certainly when requested to do so, to instruct the jury that they must not return a verdict for any higher offense than manslaughter, just as it would be his duty to instruct, in a proper case, that no sufficient evidence had been offered to either excuse or mitigate the slaying with a deadly weapon. Though the law may raise a presumption from a given state of facts, nothing more appearing, it is nevertheless the province of the court, when all of the facts are developed and known, to tell the jury whether in every aspect of the testimony the presumption is rebutted. *S. v. Roten,* 86 N. C., 701; *Doggett v. R. R.,* 81 N. C., 459; *Ballinger v. Cureton,* 104 N. C., 474."

This statement of the law was quoted with approval in *S. v. Baldwin,* 152 N. C., 822, 68 S. E., 148, and *S. v. Pollard,* 168 N. C., 116, 83 S. E., 167.

Again, in *S. v. Wilcox,* 118 N. C., 1131, 23 S. E., 928, *Montgomery, J.,* delivering the opinion of the Court, dealt with the subject as follows:

"The prisoner having admitted that he killed the deceased with a pistol, the law presumes that he acted with malice, and the burden is shifted upon him to show, not beyond a reasonable doubt, but to the satisfaction of the jury, if he can, that the facts and circumstances on which he relies to show mitigation or excuse or justification are true. These he can show from the whole evidence, as well that offered by the State as that offered by himself. And the act of 1893 (chapter 85), which divides murder into two degrees, modifies this principle of the law only to the extent of making the killing, nothing else appearing, murder in the second degree, instead of murder in the first degree, as was the case before the statute. But in the trial of cases where this doctrine of legal presumption is applicable it may happen that, when the whole of the proof is in, it is manifest that, looking at it as a whole and in its every aspect and as to every inference that could be fairly drawn from it, the presumption has been completely rebutted. A part of the testimony may prove simply a homicide, and yet, afterwards, upon the whole state of facts being made known, there is left no doubt that matters of justification or excuse or mitigation have been shown. In such a case it therefore appears that in no aspect of the testimony, in which it may be believed as a whole, can the prisoner be guilty of murder in the second degree, and the court ought to tell the jury that, in every view of the whole testimony, the presumption has been rebutted, and that they must not convict of a higher offense than manslaughter, just as the court would have power to tell them that no mitigating or excusing or justifying circumstances had been shown to reduce the degree of the offense charged, when no such testimony had been, in fact, introduced. *S. v. Miller,* 112 N. C., 878. 'As malice is a presumption which the law makes from the fact of killing, it must necessarily be a matter of law what circumstances will rebut the presumption.' *S. v. Matthews,* 78 N. C., 523."

There is nothing on the present record to show an intentional killing. The case rests upon statements coming from the defendant, in none of which is it said the killing was intentional. The dying declaration of the deceased was to the effect that the shooting was accidental. True, the State's evidence shows a killing with a deadly weapon, but it also shows circumstances of mitigation, if not of exculpation. Under these conditions, we think the instruction that the killing was presumed to be a case of murder in the second degree, was misleading and perhaps weighed too heavily against the defendant. *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143; *S. v. Lee,* 193 N. C., 321, 136 S. E., 877; *S. v. Waldroop, ibid.,* 12, 135 S. E., 165.

New trial.