STATE v. W. A. BANKS.

(Filed 22 February, 1933.)

**1. Criminal Law H c: L e—**

A motion for a continuance is addressed to the discretion of the trial court, and in the absence of abuse, his ruling thereon is not reviewable.

**2. Same—Held: Refusal of motion for continuance was free from abuse of discretion.**

In this case the defendant requested a continuance for the purpose of taking depositions as to the character of the State's witnesses who were nonresidents, without giving names, etc., as required by C. S., 560, Rule of Practice in Superior Courts No. 5. The defendant was allowed to cross-examine the witnesses before trial, and the witnesses admitted upon the trial that they had been prosecuted for various criminal offenses. The witnesses obviously could not give bond for their appearance at a subsequent term : *Held*, the trial court's refusal of the motion for a continuance was in the exercise of a discretion free from abuse.

**3. Criminal Law L e—**

The admission of testimony of a witness that the deceased was "captain" of a group of bonus marchers, and testimony of another witness in explanation of his previous testimony on private examination *is held* not to constitute reversible error in this prosecution for homicide.

**4. Criminal Law G q—Refusal to allow cross-examination of witness relative to letter he had written his wife held not error.**

In this prosecution for a homicide the defendant offered in evidence a letter written by one of the State's witnesses to his wife, which had been given defendant's counsel by the witness's wife. The defendant proposed to cross-examine the witness in respect to the letter for the purpose of showing bias : *Held*, the trial court's refusal to allow the cross-examination was not error, it appearing that the wife had given the letter to a third person and that it had not been acquired by a third person without the consent or privity of the wife, C. S., 1801, and it further appearing that the letter contained no expression of bias of the witness which was not elicited on his cross-examination.

5. **Homicide H c—Instruction in this case held not to contain reversible error.**

In this prosecution for murder the trial court's charge as to justifiable and excusable homicide *is held* not to contain reversible error, the charge correctly stating that an accidental killing committed unintentionally and without negligence was excusable, and there being no evidence of self-defense.

6. **Same—**

Remark of the court in its charge that there was no evidence that killing was "done in any other way" *is held* to relate solely to fact that killing was done with pistol, construing charge as a whole, and the instruction was in accordance with the evidence and was not erroneous.

7. **Homicide G b—Presumptions and burden of proof where killing with deadly weapon is established by State.**

Where the State establishes a killing with a deadly weapon the burden is on the State to prove beyond a reasonable doubt that the defendant perpetrated the crime, and the burden is on the defendant to rebut the presumption of malice, or prove matters rendering the killing justifiable or excusable.

APPEAL by defendant from *Harding, J.,* at June Term, 1932, of McDOWELL.

The defendant was indicted for the murder of Louis Chiapetta on 17 June, 1932; was prosecuted for murder in the second degree or manslaughter; and was convicted of manslaughter. From the judgment pronounced he appealed upon error assigned.

The deceased and J. W. Phillips, Walter Carroll, Tennie Sliter, and John Moore, Jr., of Houston, Texas, and Arthur Horton, and J. W. Barnard of Little Rock, Ark., were a part of the bonus expedition that went on trains from the southwest to Washington as ex-soldiers. They spent a few days in Washington and traveled together on their return. They arrived at Marion, North Carolina, in a box car at about 10 p.m. on 17 June, 1932. There someone shot Chiapetta and inflicted a wound which caused his death, the bullet having gone through his body. The surviving six were witnesses for the State on the trial. They testified in effect that the defendant shot Chiapetta while the latter was lying down in the box car. There was evidence for the State tending to show that the men in the box car had not had liquor, had not been drinking, and had not assaulted or resisted the defendant, and that they were on the train with the consent or acquiescence of the railroad authorities.

The conductor testified that he had not given these men his consent or permission to ride on the train. After the deceased was shot the defendant took the train and went to Asheville.

The defendant offered evidence tending to show the following circumstances: "The defendant was special railroad police officer of the

Southern Railroad, commissioned by the State of North Carolina, whose duty it was to inspect and police trains against trespassing and robbing.

On his round of duty when the train arrived in Marion, he came to the empty box car in which the deceased and his companions were riding. He flashed his light and noticed a number of men in there, and asked them to come out, but no attention was paid to him. He then crawled up into the car when someone in there hollered to him "Get out of here or we will kick your ... ... ... . head off." Just then he started to flash his light and the crowd made a move as if to go to the door, but instead of doing so, pushed him out of the door to the ground, and at the same time some one in the crowd kicked his flashlight out of his hand. When he struck the ground three or four of the men got on him and grappled with him, one on the rear and one on each side and the others around. They tried to disarm him and in the struggle the pistol was discharged one time under the train and there was a tinkling sound as if the bullet had struck metal. There was no outcry from anyone that anybody had been shot. About that time a second shot was fired from a point west and up the track. Then the deceased and those attacking the defendant began to scatter, and one of them picked up the defendant's flashlight and ran through the train and was followed a short distance by the defendant. At this time the train was pulling out and the defendant boarded it, but did not learn that any one was shot until he reached Asheville. The deceased was shot by a bullet entering in front about one and one-half inches below and just left of the navel and ranged upward slightly and passed out on the right side just back of the middle of the body and below the ribs. The defendant contended that if the deceased was hit by the bullet from the pistol of the defendant it was as a result of the ricochet of the bullet, and that the deceased could have been hit by the second shot which was fired by another."

All this was denied by witnesses for the State, who testified that the defendant shot the deceased, was accused of the offense at the time, did not deny the act, ran away from the scene, and went on the train to Asheville.

The material exceptions are set out in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Chas. Hutchins and Winborne & Proctor for defendant.*

ADAMS, J. On 13 June, 1932, the Superior Court of McDowell County convened for the trial of civil and criminal causes. In the preceding January grand jurors had been drawn whose term of service continued

STATE *v.* BANKS.

until the first day of July. They were in session during the sitting of
the court and, having concluded their work, were released on Thursday,
16 June, and were afterwards recalled by the court during the term to
investigate the homicide which meantime had occurred.

The deceased was shot with a pistol on Friday night, 17 June, 1932,
and died on the following Sunday. On Tuesday, 21 June, the grand jury
returned a bill charging the defendant with murder. The court set the
case for hearing on Wednesday, 29 June, the latest date permissible
under the statute for entering upon the trial while the court was in
session. The defendant, reserving his rights in apt time, moved for a
continuance of the case on the ground that he had not had sufficient
time to prepare his defense; that six witnesses for the prosecution were
nonresidents of the State, four residing in Texas and two in Arkansas;
that they were with the deceased at the time the wound was inflicted;
that the defendant had information which led him to believe that the
character of each of these witnesses was bad; and that he had had no
time to take the deposition of nonresident witnesses. The motion for
continuance was overruled and the defendant excepted.

It has been held in numerous decisions of this Court that the question
of granting or refusing a motion for the continuance of an action is
peculiarly within the discretion of the trial court. The exception to the
rule is the court's abuse of discretion. The defendant contends that the
circumstances bring his case within the exception, for the reason that he
had no opportunity to produce evidence as to the bad character of the
nonresident witnesses who testified on behalf of the State.

With respect to this position several facts are to be considered. It is
provided by statute that if a continuance is asked because a witness is
absent the affidavit must contain the name and residence of the witness,
the facts to be proved by him, and a statement that the applicant expects
to procure his attendance at a subsequent term. C. S., 560; Rule Su-
perior Court, No. 5. The defendant did not comply with this require-
ment. The fact that he had information which led his mind to a
particular conclusion did not remove his motion from the field of specu-
lation. The object was to get evidence of bad character, if it could be
obtained; but the defendant was permitted to cross-examine these wit-
nesses before the trial, and at the trial all admitted having had experi-
ence in the criminal courts or having been charged with violation of the
criminal law. According to their several admissions, Phillips had been
charged with theft and burglary; Carroll had been the recipient of five
bullets during a fight "up in Michigan"; Sliter had been arrested for
the theft of an emery wheel; Barnard had done work in a penitentiary;
Moore had been arrested for an aggravated assault; and Horton "had

not stayed anywhere long enough to be caught." This testimony furnished ample illumination on the question of character; more light would hardly have been supplied by a bare statement of the "good" or "bad" character of any of these witnesses; and under the circumstances it is not easy to perceive that the defendant could have been materially prejudiced by the absence of a deposition

Without regard to this, the trial judge, who continued the case for eight days was confronted with a problem. All the State's witnesses who had been in the car lived outside North Carolina; manifestly they could not give security for their attendance at a subsequent term of the court. Should they be held in custody as witnesses or discharged and permitted to leave the State? In the latter event would the defendant ever be tried? Amid these conflicting influences the court denied the defendant's motion for a continuance and in doing so exercised discretion which was free from abuse. *S. v. Garner*, 203 N. C., 361; *S. v. Rhodes*, 202 N. C., 101; *Wolf v. Goldstein*, 192 N. C., 818; *S. v. Sauls*, 190 N. C., 810; *S. v. Riley*, 188 N. C., 72; *Likas v. Lackey*, 186 N. C., 398; *Billings v. Observer*, 150 N. C., 540; *Jarrett v. Trunk Co.*, 142 N. C., 466; *S. v. Sultan, ibid.*, 569.

Neither the admission in evidence of Carroll's statement that the deceased has been "captain of the boys going up" nor the testimony of Barnard on the redirect examination in explanation of something he had previously said on his private examination constitutes reversible error. Exceptions 1, 3, 4, and 5 are overruled.

While in Marion, J. W. Barnard wrote his wife a letter dated 21 June, 1932, and in some way it afterwards went into the hands of the defendant. His wife was in another State. The defendant's counsel proposed to cross-examine Barnard in regard to the letter. What the defendant proposed to elicit from the witness does not appear. The solicitor objected and inquired where and how the defendant had procured the letter. One of the counsel for the defendant answered, "His (the defendant's) wife gave it to us." The objection was sustained and the defendant excepted.

The exception rests upon the asserted right of the defendant to produce any evidence tending to show the bias or prejudice of the witness. This position is in accord with the general rule. *S. v. Davidson*, 67 N. C., 119; *S. v. Lawhorn*, 88 N. C., 634; *S. v. Robertson*, 166 N. C., 356. There may be conditions under which the rule will not be excluded by the statutory inhibition against the disclosure of confidential communications between husband and wife during their marriage. C. S., 1801. In *S. v. Wallace*, 162 N. C., 623, it was held that the inhibition applies to the husband or the wife and not to third parties, and that if

the communication by the husband is in writing and is procured by a third party without the consent or privity of the wife the reason given by the common law for the exclusion of the communication no longer exists. The principle has been sustained in later cases. *S. v. Randall,* 170 N. C., 757; *S. v. McKinney,* 175 N. C., 784; *S. v. Branch,* 193 N. C., 621; *S. v. Freeman,* 197 N. C., 376. But it does not apply to a case in which a confidential letter written by a husband to his wife was procured by a party to the litigation by the consent or privity of the wife alone; and this is the fact with which we are here confronted. The question was discussed and the controlling authorities were cited in *McCoy v. Justice,* 199 N. C., 602, 612. It will be noted that the letters admitted in evidence in *S. v. Branch, supra,* had been delivered by the wife to a third party at the request of the defendant. In the present case the only information relating to the letter was the defendant's admission that the wife of the witness had given it to him. At the request of the defendant the letter was written into the record and in our opinion it contains no statement expressive of any bias or prejudice which the defendant did not elicit on the cross-examination of the witness.

The defendant complains that the court's definition of excusable and justifiable homicide was inaccurate and misleading, but in this we find no reversible error. The first part of the instruction dealt with accidental death and stated that homicide committed unintentionally and without negligence was excusable; and the other part was not prejudicial to the defendant because the record discloses no element of self-defense.

We do not assent to the defendant's construction of the clause which is the subject of the twenty-seventh exception. After saying the burden was on the State to satisfy the jury beyond a reasonable doubt that the defendant killed the deceased, and "that he did it with a pistol," the judge remarked, "There is no evidence to show that it was brought about in any other way"—that is, except by a pistol. All the evidence was to this effect and it is obvious that there was no error in the instruction. Any other interpretation would be inconsistent with other portions of the charge.

Exception was taken to the following instruction: "In this case the defendant doesn't admit the killing, that is, he doesn't admit that he did it. So the burden is on the State to satify you beyond a reasonable doubt that the defendant did the killing, that he did it with a pistol, and if you are satisfied of that beyond a reasonable doubt, it will be your duty to convict the defendant of murder in the second degree, nothing else appearing, and then the burden shifts to the defendant to rebut the presumption of malice raised by the use of the deadly weapon to reduce it to

manslaughter or show it was done under such surrounding situations as to make it either justifiable or excusable homicide."

Elsewhere it was said the burden was on the defendant to satisfy the jury that the presumption of malice had been rebutted. This instruction conforms to the law as uniformly declared in our decisions. The practice of "proceeding with the evidence" in a civil action is entirely distinct. *S. v. Worley,* 141 N. C., 764; *S. v. Quick,* 150 N. C., 820; *S. v. Lane,* 166 N. C., 339; *S. v. Brinkley,* 183 N. C., 720; *S. v. Miller,* 185 N. C., 679.

There are other exceptions. We have given them careful consideration. We find them to be without substantial merit or such importance as demands a more prolonged opinion. We find

No error.