## STATE v. ZEB BURRAGE.

(Filed 5 May, 1943.)

**1. Homicide § 1—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. Manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation.

5—223

**2. Homicide §§ 6a, 6b, 16—**

It is the intentional killing of a human being with a deadly weapon which raises the presumption of malice, and, nothing else appearing, constitutes murder in the second degree. And when this presumption is raised by admission or proof, the burden is on defendant to show to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter or to excuse it.

**3. Homicide § 27d—**

On trial under an indictment for murder, where defendant contends and offers evidence tending to show that he did not intend to kill deceased but that she was shot in a struggle over a pistol in his hand, a failure to instruct the jury that the presumption of murder in the second degree only arises upon an admission, or proof of the fact, of an intentional killing with a deadly weapon is prejudicial error.

APPEAL by defendant from *Warlick, J.,* at November Term, 1942, of STANLY.

Criminal prosecution upon an indictment charging defendant with the murder of Ola Lowder.

Upon the trial in Superior Court, the State offered evidence tending to show, briefly stated, these facts:

Between 9:30 and 10:00 o'clock on night of 16 June, 1942, Ola Lowder was shot with a pistol and killed in front of her residence located about a mile from the center of the town of Albemarle, Stanly County, North Carolina, on the right of the road leading towards Concord. The house is situated something like twenty-five feet from the sidewalk. A driveway leads from the highway on the right side of the house, to and under a shed. Defendant, who roomed about three-fourths of a mile away, had been going with Miss Lowder for about two years. On night of homicide, defendant and Miss Lowder were seen together on her front porch around 9:15 o'clock, where they were "having differences." At that time the cars of defendant and Miss Lowder were parked in the driveway. Soon thereafter Miss Lowder backed her car out so that defendant could back his out, which he did and left. A couple of minutes later she got in her car and went to the home of her niece, Sybil Lowder, and, in 15, 20, or 30 minutes, accompanied by Sybil Lowder, she returned to her home. In the meantime defendant had gone to his room, and returned to the residence of Miss Ola Lowder, and left, and returned again and parked his car in the driveway. Upon her return Miss Ola Lowder parked her car on the shoulder of the road in front of her residence. Defendant, who was then sitting on the front porch, got up and went to, and sat in his car with his feet on the running board. Miss Sybil got out of car on side next to the house and walked by defendant to the porch, exchanging greeting with him as she passed. Miss Ola got out of car on side away from the house and walked around the back

of the car, and on into the yard toward defendant. Whereupon, he took about two steps toward her, and when they were 3, 4 or 5 feet apart, not close enough for her to reach him, he started shooting. She threw up her hand about time of second shot and holloed at him and started stepping or staggering backward, and fell on the shoulder of the highway within two feet of the driveway. After the first shot there was a pause, and others, 3 or 4, as many as three in all, were fired in quick succession. One shot entered her chest, and apparently went through her body and came out in the back. Other wounds were in her arm and in her side. Her right arm was broken. She died almost instantly. Neither Miss Sybil nor a person across the street heard defendant or Miss Lowder say anything before the shooting started. After the shooting defendant turned around, walked back to his car, got in, backed out of the driveway, and drove to his rooming house, went to his room and shot himself, the bullet entering the throat and coming out over eye. To a later inquiry as to "what happened," he replied, "I shot Miss Ola Lowder a while ago. I think I killed her. I meant to at least. If I didn't, tell her I still love her."

The State further offered evidence tending to show that defendant stated that he didn't carry the pistol with him the first time he went to see Miss Lowder that night; that he kept it at home in the bottom of his suitcase; and that he went back home and got it. And there was evidence that there were two suitcases in his room and that "one was open and the stuff in one corner turned back."

On the other hand, defendant offered evidence tending to show that he was in love with Miss Ola Lowder; that he had been to Virginia and came home in the late afternoon of 16 June and went to her home; that she did not know he was coming, and was away from home; that when she came in, differences arose, as detailed by him, and she told him that she couldn't see him that night, that he would have to go, and, quoting her, "if you don't I have got a friend I am going to get and bring him and have him send you home"; that he left, but upon reaching his room, he "got to studying," and thought he would go and "see if she was mad" —and if he left he "wouldn't see her any more"—that he "thought the world of her"; that, in consequence, he drove back to her house, parked his car in the driveway and went up on the porch; that when she and her niece drove up he went back to his car, and, on seeing someone get out of the car, "one on one side and one on the other," he couldn't tell whether it was a man or woman; that he then opened the car door, reached over the seat and picked up the gun "where it had been laying in the back on the floor"; that after Miss Sybil passed by, Miss Ola walked right up to him, and in kind of low voice said, "What you doing with that gun in your hand?" and before she gave him time to answer

she grabbed the gun with both hands, brought it right up at her breast, and the gun went off; that "she whirled around sideways . . . and still held on to the gun, three shots were fired"; that "she did not let go the gun until the last shot was fired"; and that he "doesn't know who fired the shots" nor "who pulled the trigger"; and, that, using his words, "after the shots were fired she turned and left me, went toward her car, kindly staggered, but I knew she was killed the way she acted . . . I was sorry she was shot and I turned and went back to my car and decided to shoot myself after she had been shot."

Verdict: Guilty of murder in the first degree and recommend mercy.

Judgment: Death by asphyxiation.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Brown & Mauney and Hartsell & Hartsell for defendant, appellant.*

WINBORNE, J. Of the exceptions upon which defendant challenges the trial in Superior Court, it is sufficient to consider these two, which entitle defendant to a new trial.

In the course of the charge, after defining murder in the first degree, murder in the second degree, and manslaughter, the court instructed the jury:

"Now, for instance, as we started on the controversy the burden was on the State on the whole of the trial at that time to satisfy you Gentlemen first, among other things, before any burden, so to speak, left the State and rests or was cast as a laboring oar to the defendant, to satisfy you first that this defendant, or prisoner as he is called in a capital case, took the life of Miss Ola Lowder with a deadly weapon. (Now as an illustration, if during the progress of the trial you become satisfied beyond a reasonable doubt that Zeb Burrage, the prisoner, did take Miss Ola Lowder's life with a deadly weapon, this pistol which I stated to you as a matter of law is a deadly weapon, then under that showing made by the State he was then looked upon by the State as guilty of murder in the second degree, nothing else appearing, then so far as that charge was concerned there thereafter was no burden on the State on the question of murder in the second degree, so he must—for when that showing is made by the State beyond a reasonable doubt or is admitted by the prisoner charged with the crime then he must—the law presuming malice from the use of a deadly weapon—then there is cast upon him the burden of going forward and excluding the presumption that the State lodges against him under that showing made or of rebutting that presumption.)"

Exception is directed to so much thereof as is in parentheses.

And, again, the court continued:

"(Now that presumption arises of his guilt of murder in the second degree if he admits in the trial or if it is proven beyond a reasonable doubt that this life was taken with this pistol, so then the laboring oar is cast to the prisoner to show you such evidence or such fact as would remove the alleged crime of murder and to bring it down to manslaughter or which would abrogate and destroy it altogether and to so justify you in returning a verdict of not guilty.)"

To this instruction defendant excepts.

The vice common to these instructions is the failure to instruct that it is the intentional killing of a human being with a deadly weapon which raises the presumption of malice.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. Manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. These definitions of murder in the first degree, murder in the second degree and manslaughter are too firmly imbedded in the law to require citation of authority. Moreover, the law is well established in this State that the intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree. And when this implication is raised by an admission or proof of the fact of an intentional killing, the burden is on the defendant to show to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter or to excuse it. *S. v. Capps,* 134 N. C., 622, 46 S. E., 730; *S. v. Quick,* 150 N. C., 820, 64 S. E., 168; *S. v. Benson,* 183 N. C., 795, 111 S. E., 869; *S. v. Gregory,* 203 N. C., 528, 166 S. E., 387; *S. v. Keaton,* 206 N. C., 682, 175 S. E., 296; *S. v. Terrell,* 212 N. C., 145, 193 S. E., 161; *S. v. Robinson,* 188 N. C., 784, 125 S. E., 617; *S. v. Mosley,* 213 N. C., 304, 195 S. E., 830; *S. v. Debnam,* 222 N. C., 266, 22 S. E. (2d), 562; *S. v. Utley, ante,* 39.

In the *Keaton case, supra,* the rule is stated in this manner: "If a defendant who has intentionally killed another with a deadly weapon would rebut the presumption arising from such showing or admission, he must establish to the satisfaction of the jury the legal provocation which will take from the crime the element of malice and thus reduce it to manslaughter, or which will excuse it altogether on the ground of self-defense, unavoidable accident or misadventure."

In the *Debnam case, supra,* the Court, speaking through *Seawell, J.,* said: "Where the defense is based on the theory of accidental shooting, and intentional use is not admitted, but, on the contrary, denied, and

becomes the crux of the controversy, the court must be meticulous in instructing the jury that the intentional use of the deadly weapon is necessary to raise the presumption."

Applying these principles to the case in hand, defendant does not admit an intentional killing of Ola Lowder. He denies that he intended to kill her and contends that she was shot in a struggle over a pistol he had in his hand. In the light of this contention, failure to instruct the jury that the presumption only arises upon an admission, or the proof of the fact of an intentional killing with a deadly weapon is prejudicial error.

Moreover, the second portion to which exception is taken places burden upon defendant "to show such evidence or such fact as would remove the alleged crime of murder." The alleged crime is murder in the first degree. The jury may fairly have understood that the burden was on defendant to show that he was not guilty of murder in the first degree. This is not his burden.

It is not deemed necessary to consider other exceptions.

For errors pointed out, let there be a

New trial.