STATE v. GRACE HAYES WINGLER and CALVIN MILLER.

(Filed 4 November, 1953.)

**1. Homicide § 25—Evidence of defendants' guilt of murder in the second degree held sufficient for jury.**

The State's evidence tending to show that there had been previous trouble between deceased and the male defendant, that after an altercation they were approaching each other on the highway, the male defendant having a pistol in his hand, and that the *feme* defendant asked the male defendant for his pistol, stating that she would kill deceased, that he gave her the gun and that she shot and killed deceased, *is held* sufficient to take the case to the jury on the question of the *feme* defendant's guilt of murder in the second degree and the male defendant's guilt as a co-principal in aiding and abetting the *feme* defendant.

**2. Criminal Law § 81c (3)—**

Testimony of officers as to the condition of the house and the location of the *feme* defendant and her male companion when they arrived at the house at a time when other officers of the law and a number of people were outside, *held* not prejudicial on the ground that it tended to show adultery between the *feme* defendant and her companion, since under the circumstances the jury could not have been improperly influenced thereby.

**3. Same—**

The admission of testimony on examination and on cross-examination in regard to collateral matters which could not have influenced the jury in reaching its verdict will not be held for reversible error.

**4. Homicide § 27f—**

Defendants' contention that the court failed to adequately charge on the aspect of an accidental homicide, supported by defendants' evidence, *held* untenable, it appearing that the court clearly and adequately charged

that defendants would not be guilty if the fatal injury was the result of an accident, and defined the terms.

**5. Homicide § 27d—In defining murder in the second degree court need not charge that killing must be intentional in addition to unlawful.**

In this prosecution of defendants for murder in the second degree, the court defined murder in the second degree as the unlawful killing of a human being with malice but without premeditation and deliberation and correctly defined the terms. The court also correctly defined manslaughter and adequately charged the jury upon defendants' defense that the fatal pistol wound was accidentally inflicted, and correctly placed the burden of proof on the State. The court did not charge on the presumptions arising from an intentional killing with a deadly weapon. *Held:* In defining murder in the second degree it was not error for the court to fail to charge that the killing must not only be unlawful but must also be intentional in order to constitute murder in the second degree, defendants' defense of accidental killing having been fully presented to the jury.

**6. Criminal Law § 85d—**

An opinion of the Supreme Court must be considered in the light of the case in which it is delivered.

APPEAL by the defendants from *Clement, J.,* March Term, 1953. WILKES. No error.

This is a criminal action in which Grace Hayes Wingler, Calvin Miller and Duel Miller were tried on a bill of indictment charging them with the murder of Lance Owens. The solicitor did not put them on trial for first degree murder. The jury's verdict was guilty of murder in the second degree as to Grace Hayes Wingler and Calvin Miller. The State was nonsuited as to Duel Miller at the close of its case.

The State presented evidence tending to show the following facts.

Between 7:30 and 8:00 o'clock p.m., on 3 November 1952, Grace Hayes Wingler, Calvin Miller and Duel Miller and one Woodie went to Lloyd Bare's beer joint in the Blue Ridge Mountains in Wilkes County near the Ashe County line. Johnny Ashley and Freeman Bauguess were there when they arrived. All had some beer. Then Lance Owens and Kyle Blackburn came in and had beers to drink. The piccolo was playing, and Grace Wingler and Duel Miller were dancing. Lance Owens got up, and "was stomping around there too by himself." After they danced about half an hour Bare told them they had to quit. Then Duel Miller and Lance Owens had an argument. Duel Miller said if he had a gun he would shoot Lance. Lance replied "you know damn well you wouldn't as much as we have worked on the road together." Lance got out his knife. Duel Miller told Calvin Miller to go out and get his gun. Bare told Owens to put up his knife. Owens shut it up, and put it in his pocket, but "balled up his fist." Bare ordered them to leave.

Duel Miller went out first, and took a seat in his car. Owens went out, and came back in. Then Owens hit Calvin Miller, knocking him out of the door. Owens went out of the store, followed by Grace Wingler. Calvin Miller went to Grace Wingler's car, and got a pistol. Owens was in front of the store, and Calvin Miller was on the other side of the road. Back of Owens were Blackburn and Ashley. Calvin Miller fired the pistol, and the bullet hit by them on the gravel. Calvin Miller and Grace Wingler walked toward each other, meeting about the middle of the road. Owens was also going that way. Grace Wingler said to Calvin "give me the gun, I will shoot the s—— of a b——." Calvin gave Grace Wingler the pistol and ran down the road. Owens grabbed her arm. They scuffled in the road. Grace Wingler shot the pistol hitting Owens in the leg. He turned her loose, and reached down on his leg with one of his hands. He was standing kind of bent over, and she raised the pistol up, stuck it against his chest and fired. Owens fell on his face, and she fell. Owens never spoke again. The bullet in his chest lacked about a half inch coming through the skin at the back. Owens died the night he was shot.

The defendants' evidence tended to show these facts. Grace Wingler heard the shot Calvin Miller fired, and walked toward him, and asked him to give her the gun before somebody got shot. She denied saying "give me the gun, I will kill the s—— of a b——." Owens was approaching them with his knife open. Neither Owens nor Calvin Miller said anything. Calvin Miller gave her the gun in about the middle of the highway. She started toward her car. Owens said "you damn b——, I will kill you," and grabbed her, and slung her down. She thought he was going to come on her with the knife, so she shot under his feet to scare him. She scrambled to her feet, and started again to her car. Owens caught her by the back of the neck, and grabbed her arm. They scuffled in the road. All at once something hit her in the back of her head, and that is all she remembered. Owens never said he was going to kill Calvin Miller. Duel Miller was the owner of the pistol.

The court sentenced both defendants to imprisonment. Both defendants appeal, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*Trivette, Holshouser & Mitchell and Whicker & Whicker for defendants, appellants.*

PARKER, J. In the record the defendants have 89 exceptions, and 38 assignments of error. However, only 9 assignments of error and 19 exceptions are argued in their brief.

The appellants' assignment of error No. 11 is to the court's overruling their motions for nonsuit, particularly as to Calvin Miller. The State's evidence tends to show that Calvin Miller, with a pistol in his hand, and Lance Owens were approaching each other on the highway. There had been previous trouble between them. Grace Wingler came up, and asked Miller for the gun saying "give me the gun, I will shoot the s—— of a b——." He gave her the gun, and she shot Owens, and killed him. We are of opinion that there was plenary evidence to carry the case to the jury that Grace Wingler was guilty of second degree murder, and that Calvin Miller was present as a co-principal aiding and abetting Grace Wingler and equally guilty. *S. v. Jarrell,* 141 N.C. 722, 53 S.E. 127; *S. v. Williams,* 225 N.C. 182, 33 S.E. 2d 880; *S. v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113; *S. v. Holland,* 234 N.C. 354, 67 S.E. 2d 272; *S. v. Moore,* 236 N.C. 617, 73 S.E. 2d 467. The assignment of error No. 11 is without merit.

The appellants' assignment of error No. 22 is based upon their exceptions Nos. 66, 67, 68, 69, 70 and 71. Grace Wingler testified as a witness for herself, and Duel Miller testified as a defense witness. According to the defendants' evidence, Grace Wingler and Duel Miller were partners in the operation of a store with beer and groceries in sight of Lloyd Bare's beer joint. Duel Miller on 3 November 1952 had been sick in bed, Grace Wingler had been working in the store all day, and when Duel Miller got up they closed their store about 7:30 or 8:00 p.m., and went to Bare's place. The State in rebuttal offered the testimony of Charley Dancy and Wrenn Hayes, both deputy sheriffs of Wilkes County. About midnight on 3 November 1952, these two deputy sheriffs went to Grace Wingler's and Duel Miller's place of business to arrest her for the murder of Lance Owens. Owens was then dead. They found present several patrolmen and the Sheriff of Ashe County. When they went in Grace Wingler was in the kitchen, and Duel Miller was sitting on the bed. Dancy, during his examination in chief, was asked these questions: Q. When you arrived up there at Grace Wingler's place of business and Duel Miller's, what was the condition of the rooms there, if you know? Wingler objects. Overruled. Exception 66. A. She was in her bedroom. I pecked on the front door and saw her come around to the back door. I went around to the back door and she opened the door. I went in the kitchen, and she was in the bedroom. Q. Was anybody in there with her at that time? Wingler objects. Overruled. Exception 67. A. I believe Duel was there. I am not sure. Defendant Wingler moves to strike out answer. Motion allowed. Q. You may state if Grace Wingler had her clothes strewn around there in the room when you went in? This question was not answered. The defendant Grace Wingler moves to strike his evidence on this ground, they asked her about it and we say for the purpose of im-

peaching her and she denies it and they are bound by it.    Overruled.
Exception 68.    Wrenn Hayes testified on direct examination that he was
a deputy sheriff of Wilkes County on 3 November 1952, and on that night
went to Grace Wingler's and Duel Miller's place of business.    When he
and Charley Dancy arrived two patrolmen were there and the Sheriff of
Ashe County with several standing out in the yard.    The defendant
Calvin Miller objected.    The court instructed the jury that this testimony
was not evidence against Calvin Miller.    Grace Wingler objected.    Over-
ruled.    Exception 69.    Hayes was asked this question: Q. Where was
Grace and where was Duel when you went in?    Defendant Wingler ob-
jects.    Overruled.    Exception 70.    A. When we went in Grace was stand-
ing in the kitchen.    She had undone the door and Duel was in the bed,
sitting on the bed.    Q. What, if anything did she tell you about how it
happened?    Defendant Wingler objects.    Exception 71.    A. She said she
was in a scuffle.

The defendants contend that this tended to show adultery between
Grace Wingler and Duel Miller; that Grace Wingler beforehand denied
spending the night sometimes with Duel Miller; that the State is bound
by her answer, and that the admission of this evidence is prejudicial error.
The testimony of the two Wilkes County deputy sheriffs as to where
Grace Wingler and Duel Miller were when they arrived with three officers
already in the store and people outside, in our opinion, could not have
improperly influenced the jury in arriving at their verdict.    This assign-
ment of error is untenable.

Assignment of error No. 12 based on exceptions Nos. 30, 31 and 32 is
that on cross-examination of Grace Wingler the State brought out over
her objections that she had had two husbands, and both were dead—one a
suicide.    Assignment of error No. 8 based on exception 23 is that Black-
burn, a witness for the State, was allowed to say, over objection, that he is
now in the Service.    Assignment of error No. 10 based on exceptions Nos.
27 and 28 is that Bauguess after testifying he could not help Owens in
the car after he was shot because he was crippled, was allowed to say, over
objection, that he had an artificial right leg.    This was exception 27.
Exception 28 is that he was asked if he was related to either the State's
or the defendants' witnesses, and over objection replied, not that I know
of.    Obviously, the admission of such testimony would not justify the
overthrow of the jury's verdict upon such slender technicalities.

The appellants' assignment of error No. 35, based on exception No. 86,
is that the court failed to charge the jury adequately that if Grace Wing-
ler intentionally pointed the pistol at the deceased and the pistol acci-
dentally discharged killing Owens, the defendants would be guilty of no
greater crime than manslaughter, provided she was not committing a
felony at the time of the fatal shot, and failed to charge properly as to an

accidental killing. The court stated clearly and fully the contentions of the appellants as to an accidental killing. Then it charged "if they were scuffling over the gun, somebody hit her in the head and knocked her unconscious, even though the gun went off in her hand, she would not be guilty, because to make her guilty, she must have intended to commit the act with which she is charged, and if she was unconscious, she couldn't form an intent to do a thing, it would be an accident." Then the court defined "an accident." This is a substantial compliance with the law as set forth in our decisions on accidental homicide. *S. v. Banks,* 204 N.C. 233, 167 S.E. 851; *S. v. Williams,* 235 N.C. 752, 71 S.E. 2d 138; *S. v. Bright,* 237 N.C. 475, 75 S.E. 2d 407.

Assignment of error No. 36, based on exception No. 87, is that the court failed to instruct the jury that the State was required to show that Owens came to his death as a proximate result of the pistol wound inflicted by the defendant Wingler, and that the burden of proof rested upon the State to show beyond a reasonable doubt that said wound was intentionally inflicted.

The court correctly defined murder in the second degree as the unlawful killing of a human being with malice, but without premeditation and deliberation, and manslaughter as the unlawful killing of a human being without malice and without premeditation and deliberation. He then correctly defined malice, and reasonable doubt, and correctly placed the burden of proof on the State. The court in stating the State's contentions said in part: "the State contends . . . that you should be satisfied beyond a reasonable doubt that both the defendants Wingler and Calvin Miller are guilty of murder in the second degree in that they unlawfully slew the deceased, and they did it with malice"; and further on "the State contends you should find beyond a reasonable doubt from the testimony that he (Calvin Miller) gave her the gun and he gave it to her for the purpose of letting her shoot him and that she did shoot him, that she shot him twice and that he died as a result of the shot, so the State contends you should be satisfied beyond a reasonable doubt that she killed him by shooting him, that when she did so, she did it unlawfully, and that she did it with malice." The court further charged "the State contends you should be satisfied beyond a reasonable doubt that Calvin Miller gave her the gun, that he gave it to her for the purpose of letting her shoot Owens, that he aided and abetted her in the shooting, and therefore you should find he is guilty of murder in the second degree . . . that you should be satisfied beyond a reasonable doubt that he is guilty of murder in the second degree in that he unlawfully slew the deceased by aiding Grace and that he did it with malice."

The defendants' defense was based on the theory of an accidental killing and self-defense, and hence the verdict that the shooting of Owens

was unlawful was vital in contradiction of the appellants' contention of death by accident. The cases are many in which we have said that murder in the second degree is the unlawful killing of a human being with malice. *S. v. Suddreth,* 230 N.C. 239, 52 S.E. 2d 924; *S. v. Burrage,* 223 N.C. 129, 25 S.E. 2d 393; *S. v. Starnes,* 220 N.C. 384, 17 S.E. 2d 346; *S. v. Bright,* 215 N.C. 537, 2 S.E. 2d 541; *S. v. Benson,* 183 N.C. 795, 111 S.E. 869. We have also said in numerous cases, when it is admitted or proven that the defendant intentionally killed the deceased with a deadly weapon, the law raises two presumptions against him; first, that the killing was unlawful; and second, that it was done with malice; and an unlawful killing with malice is murder in the second degree. *S. v. Lamm,* 232 N.C. 402, 61 S.E. 2d 188; *S. v. Chavis,* 231 N.C. 307, 56 S.E. 2d 678; *S. v. Suddreth, supra; S. v. Burrage, supra; S. v. Benson, supra.*

The court did not in its charge refer to the principle of law that an intentional killing with a deadly weapon raises two presumptions; first, that the killing was unlawful, and second, that it was done with malice, but it did charge accurately all the essential elements of murder in the second degree as the unlawful killing of a human being with malice, and all the essential elements of manslaughter. The appellants argue there was error, because the court nowhere in the charge stated that the killing must not only be unlawful, but *must be intentional,* and cites this language from *S. v. Williams,* 235 N.C. 752, "to convict a defendant of murder in the second degree, the State must prove that the defendant intentionally inflicted the wound which caused the death of the deceased." We have examined the full charge of the court in the *Williams case,* and in that case the trial judge charged the principle that when it is admitted or proven that the defendant intentionally killed the deceased with a deadly weapon the law raises two presumptions against him, etc. We are admonished by authority no less eminent than *Chief Justice Marshall* that every opinion to be correctly understood ought to be considered with a view to the case in which it was delivered. *U. S. v. Burr,* 4 Cranch 470, 2 L. Ed. 684. Reading the quoted language from the *Williams case* with a view to the case in which it was delivered it means that when the doctrine that the intentional killing of a human being with a deadly weapon is admitted or proven it implies malice and, if nothing else appears, constitutes murder in the second degree is stated that the use of the word *intentional* is indispensable, and the judge must be meticulous to use it. *S. v. Suddreth, supra; S. v. Burrage, supra; S. v. Debnam,* 222 N.C. 266, 22 S.E. 2d 562; *S. v. Gregory,* 203 N.C. 528, 166 S.E. 387. The quoted language in the *Williams case* does not mean that we have changed the definition of murder in the second degree as stated by us so many times, and that murder in the second degree is now defined as the unlawful and *intentional* killing of a human being with malice. It is not essential that

there be an *intentional killing* of a human being with malice to constitute murder in the second degree, for instance, "if the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous, and death ensues, the person violating the statute is guilty of manslaughter at least, and, under some circumstances, of murder." *S. v. Palmer*, 197 N.C. 135, 147 S.E. 817; *S. v. Stansell*, 203 N.C. 69, 164 S.E. 580. In *S. v. Phillips*, 229 N.C. 538, 50 S.E. 2d 306, the State's evidence tended to show that the deceased was killed by the unintentional discharge of a pistol being handled by the defendant in a criminally careless and reckless manner. The defense was an accidental killing. The State did not ask for a verdict of first degree murder but for a verdict of second degree murder or manslaughter. This Court held that it was prejudicial error to charge the presumptions arising from an intentional killing with a deadly weapon, as there was no evidence of an intentional killing. The case was sent back for trial for manslaughter.

This was the crux of this case: was the killing of Owens an unlawful killing with malice, or was it an unlawful killing, or was it an accidental killing, or a killing in self-defense? We think that the court sufficiently presented these views in substantial compliance with the law of this State, and that there could be no misapprehension on these points on the part of the jury. The assignment of error No. 36 is overruled.

We have examined each of the appellants' assignments of error, whether herein specifically referred to or not, and find none of them sufficient to justify a new trial.

We conclude that in the trial there was

No error.