## STATE v. MARION GORDON.

(Filed 14 January, 1955.)

**1. Homicide § 16—**

> The intentional killing of a human being with a deadly weapon raises the presumptions that the killing was unlawful and that it was done with malice, constituting it murder in the second degree.

**2. Same—**

> The requirement that the killing of a human being with a deadly weapon must be intentional in order for the presumptions from such killing to

arise does not import that defendant must have intended to kill, but only that he should have intentionally used the deadly weapon.

**3. Same—**

Where the State's evidence tends to establish an intentional killing of a human being with a shotgun, and defendant does not contend that the gun was discharged accidentally, but defends solely on the ground that he killed in self-defense, the presumptions from an intentional killing with a deadly weapon obtained, and it is incumbent upon the defendant to satisfy the jury of the truth of facts justifying or mitigating the killing.

**4. Homicide § 27h—**

Where, in a prosecution for murder in the second degree, the State's evidence tends to establish the intentional killing of a human being with a deadly weapon by defendant, and defendant defends solely upon the plea of self-defense, nonsuit is properly denied, and the cause is properly submitted to the jury upon the question of defendant's guilt of murder in the second degree, guilt of manslaughter, or not guilty.

**5. Homicide § 18—**

Where, upon the *voir dire*, the State's evidence discloses that at the time of making the declarations, declarant was in an obviously critical condition and stated he would "never make it," and that shortly thereafter he died, *is held* sufficient predicate for the admission of his statements as dying declarations.

**6. Same—**

The admissibility of statements as dying declarations is for the trial court to decide, and its decision is reviewable only for the purpose of determining if there was any evidence tending to show the facts essential to admissibility.

**7. Same—**

Proper predicate having been laid for the admission of declarant's statements as dying declarations, testimony of such declarations, including a declaration that declarant was not doing anything to defendant when defendant shot him, is properly admitted, and the fact that the declarations were made in response to questions of an officer spontaneously asked in regard to the *res gestae* does not render them incompetent, the court having excluded a declaration as to a conclusion of declarant that defendant had no cause or reason to shoot him, and limited the declarations to the *res gestae*.

**8. Criminal Law § 78—**

Assignments of error to the charge must be predicated upon exceptions previously noted in the case on appeal.

**9. Criminal Law § 79—**

Assignments of error not supported by argument or authority cited in the brief are deemed abandoned.

APPEAL by defendant from *Gwyn, J.*, 8 March, 1954 Term, of FORSYTH.

Criminal prosecution on bill of indictment charging the defendant with the first degree murder of Joseph Boyles. Upon call of the case for trial, the Solicitor announced that the State would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree.

During the afternoon of Monday, 15 February, 1954, the defendant shot the deceased. The defendant used his single-barrel, sixteen-gauge shotgun. The shooting occurred on the defendant's premises, the deceased and the defendant being the only persons there. From 6 p.m., or thereabout, the deceased was in the City Hospital, Winston-Salem, where he was under the constant attention of doctors and nurses. An emergency operation was performed. Early Tuesday morning he died, the cause of death being the shotgun wounds inflicted by the defendant.

The jury returned a verdict of Guilty of Murder in the Second Degree. Thereupon, the court pronounced judgment that defendant be confined in the State's Prison for a term of not less than six (6) years nor more than eight (8) years, from which the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*Buford T. Henderson for defendant, appellant.*

BOBBITT, J. When the killing with a deadly weapon is admitted or established, two presumptions arise: (1) that the killing was unlawful; (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree. In *S. v. Gregory*, 203 N.C. 528, 166 S.E. 387, where the defense was that an *accidental* discharge of the shotgun caused the death of the deceased, it was stated that the presumptions arise only when there is an *intentional killing* with a deadly weapon; and since the *Gregory* case it has been often stated that these presumptions arise only when there is an intentional killing with a deadly weapon. But the expression, *intentional killing,* is not used in the sense that a specific intent *to kill* must be admitted or established. The sense of the expression is that the presumptions arise when the defendant *intentionally assaults* another with a deadly weapon and thereby proximately causes the death of the person assaulted. *S. v. Cephus,* 239 N.C. 521, 80 S.E. 2d 147; *S. v. Wingler,* 238 N.C. 485, 78 S.E. 2d 303; *S. v. Jones,* 188 N.C. 142, 124 S.E. 121. A specific intent *to kill,* while a necessary constituent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder or manslaughter. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions. *S. v. Quick,* 150 N.C. 820, 64 S.E. 168. The presumptions do not arise if an instrument, which is

*per se* or may be a deadly weapon, is not intentionally used as a weapon, *e.g.,* from an accidental discharge of a shotgun.

The defendant's plea is self-defense. There is neither evidence nor contention that the shotgun discharged accidentally. The defendant's testimony and contention is that he shot the deceased when under the reasonable apprehension that it was necessary to do so in order to protect himself from death or great bodily harm. The State offered plenary evidence and the defendant admitted that death proximately resulted from shotgun wounds so inflicted. Support of the defendant's plea of self-defense arises out of the defendant's evidence, principally his own testimony, not out of the State's evidence. Under these facts, the presumptions arose; and so it was incumbent upon the defendant to satisfy the jury of the truth of facts which justified or mitigated the killing in accordance with legal principles too well settled to warrant reiteration.

From the foregoing, it appears that there was no error in overruling the motions for judgment as in case of nonsuit; and, under the court's instructions, it was for the jury to determine, in accordance with their findings as to facts, whether the defendant was guilty of second degree murder or manslaughter or not guilty. The case was properly submitted to the jury in this manner.

· The defendant insists that the court erred in the admission of testimony of the sheriff, a State's witness, as to declarations made by deceased. The facts necessary for an understanding of this assignment of error are set out below.

In the hospital Emergency Room, between 6 and 6:30 p.m., Dr. Glod, a medical expert, found the condition of deceased to be as follows: Located in the upper left abdomen, there was a ragged wound, four to five inches in diameter. His intestines were outside his abdominal cavity. He was suffering from profound shock. By intravenous fluids and blood transfusions he was prepared for an emergency operation. At operation it was found that there were severe, multiple perforations of the upper five feet of his small intestines, with perforations through the area where blood is supplied to these intestines and multiple perforations to the left side of his large bowel. His left kidney was completely shattered along the lower half. He had a deep wound in his muscles in the back, right below the kidney, with shattering of the lateral portions of his spine in that area. The wound extended to a point approximately two inches from the surface of the skin in the back and contained wadding and numerous metallic pellets. There was no wound of exit. During and after the operation he was given approximately sixteen pints of blood. Dr. Glod remained with him constantly until he died, some eight and one-half hours after the operation, as the result of this gunshot wound.

E. G. Shore, high sheriff of Forsyth County, testified that he saw the deceased in the hospital Emergency Room about 7 o'clock p.m. and then talked with him. This was their only conversation. The doctors and nurses were working in and out of the room while he was there. The deceased was conscious.

Upon objection to testimony as to their conversation, the court, in accordance with the approved practice, excused the jury. In the absence of the jury, the sheriff testified: "I said to him, 'Joe, you are seriously wounded, and you may not survive.' He said to me, he says, 'Sheriff, I will never make it. I can't make it.' I says, 'Now, if you have got any statement to make, tell me the truth, because it may be your last one.'" Upon this testimony, particularly the deceased's statement that he knew he would not make it, the court ruled that the sheriff's testimony as to the declarations of the deceased, relating to the *res gestae,* would be competent.

Upon the return of the jury, the sheriff was asked what conversation he had with Boyles in the hospital Emergency Room. After repeating substantially the same testimony he had given in the absence of the jury, he continued: "And I said, 'Did this man have any cause or reason to shoot you?' He says, 'None whatsoever.'" It is noted that defendant did not object to this question, but promptly moved that the answer be stricken. The court immediately allowed defendant's motion. It is apparent that both the motion and the ruling were addressed to the declaration of deceased to the effect that defendant had no cause to shoot him; for the court, in explanation of the ruling, pointed out that such declarations were admissible only when the testimony itself could have been given by the declarant, if living, as a witness in court, and therefore must relate to facts and circumstances, not conclusions.

The record as to what then transpired is as follows:

"THE SOLICITOR: What was said there about who did the shooting? A. I asked him if Marion Gordon shot him, and he said he did. Q. Did he tell you where he was at the time Marion shot him? A. Yes sir, he did. Q. Where did he say he was? A. Up near the barn. Q. Did he make any statement to you about whether he was doing anything at all to Marion Gordon? OBJECTION OVERRULED and defendant, in apt time, excepts— EXCEPTION No. 1. A. He said he was not. THE COURT: The Court allows the character of the question, so far as any leading is concerned. Did you say he said he was at the barn, Sheriff? A. Yes Sir. THE SOLICITOR: Did he tell you where he was standing at the time he was shot by Marion Gordon? A. He said he was standing just outside of his automobile. Q. What inquiry did you make, Sheriff, about what, if anything, he was doing to Marion Gordon at the time? A. I asked him if he was doing anything to Marion Gordon, and he said he was not."

The further testimony of the sheriff relates to his observations at the scene where the shooting occurred and is not pertinent to the assignment of error under discussion.

It does not appear that the defendant objected to any of the foregoing questions except: "Q. Did he make any statement to you about whether he was doing anything at all to Marion Gordon?", to which the witness answered, "He said he was not." It appears further that substantially the same question was later asked, and a like answer given, without objection. But, without regard to whether the defendant may be considered as having made an objection to each question invoking testimony as to the declarations of deceased, the testimony given was competent. In *S. v. Williams,* 168 N.C. 191, 83 S.E. 714, the dying declaration of the deceased that the defendant had shot him, without cause, was held properly admitted. See: *S. v. Beal,* 199 N.C. 278, 154 S.E. 604. Here, the court excluded testimony to like effect, carefully limiting the testimony to facts and circumstances comprising the *res gestae.* Under the facts disclosed here, we approve the rulings of the court. Certainly, under the *Williams case,* no error prejudicial to the defendant is shown.

Defendant, in his brief, bases his position upon the proposition the evidence failed to disclose a sufficient predicate for the admission of any testimony by the sheriff as to declarations of the deceased. The necessary basis for the admission of such evidence has been stated often.

In *S. v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156, *Seawell, J.,* said: "The conditions under which such evidence may be admitted have been variously stated, but the summary, by *Adams, J.,* in *S. v. Collins,* 189 N.C. 15, 126 S.E. 98, is sufficiently clear: 'The rule for the admission of dying declarations is thus stated: (1) At the time they were made the declarant should have been in actual danger of death; (2) he should have had full apprehension of his danger; (3) death should have ensued. *S. v. Mills,* 91 N.C. 581, 594.' For the sake of completeness, although not important in the case at bar, we might add to this a fourth condition that the declarant, if living, would have been a competent witness to testify as to the matter. *S. v. Beal,* 199 N.C. 278, 297, 154 S.E. 604."

Defendant insists the declarations should have been excluded as incompetent because made in answer to interrogatories calculated to lead the deceased to make particular statements. A rule to this effect is embodied in a Texas statute. Vernon's Texas St. 1948, Article 725, subd. 3. The several Texas decisions cited by defendant must be read with the statute in mind. In *People v. Kane,* 213 N.Y. 260, 107 N.E. 655, L.R.A. 1915F 607, Ann. Cas. 1916C 685, cited by defendant, the Court pointed out that this was the rule, independent of a statute such as that of Texas, applying to statements of the wounded person in regard to his hope of recovery just as much as to statements respecting the identity of his assailant. In

the New York case, the admission of the dying declarations in the case under consideration was approved; but the court took occasion to disapprove the use by officers of a questionnaire, calling for a "Yes" or "No" answer by the declarant to questions printed thereon, *e.g.,* "Do you now believe that you are about to die?"—"Have, you any hope of recovery from the effects of the injury that you have received?"—"Are you willing to make a true statement as to how and in what manner you came by the injury from which you are now suffering?"

It is to be noted that no uncertainty exists in this case as to the identity of the assailant. Furthermore, it would appear that under the facts here the declarations would have been deemed competent under the Texas and New York cases; for here the circumstances are such that the inquiry was not perfunctory, by filling out a questionnaire, to be kept available in the event the injured man perchance took a turn for the worse, but as nearly spontaneous as declarations by one under the circumstances could be.

The facts concerning his then obviously critical condition, at the time of his declarations and continuously thereafter until his death, together with his conscious statement that he would "never make it," furnish ample basis for the ruling of the court admitting evidence as to his declarations. It is to be noted that the admissibility of the evidence was for the court to decide, his decision being reviewable only for the purpose of determining whether there was any evidence tending to show the facts essential to admissibility. Stansbury, N. C. Evidence, secs. 8 and 146; *S. v. Poll,* 8 N.C. 442; *S. v. Jordan, supra.*

Two assignments of error are directed to the charge. Whether these assignments of error sufficiently particularize wherein it is contended the court failed to charge correctly, *S. v. Dilliard,* 223 N.C. 446, 27 S.E. 2d 85, need not be decided, for we find that they are not based on exceptions previously noted in the case on appeal and must be disregarded. *Moore v. Crosswell,* 240 N.C. 473, 82 S.E. 2d 208.

No reason or argument is stated and no authority is cited in appellant's brief bearing upon the other assignments of error. Hence, they are deemed to have been abandoned. *S. v. Bittings,* 206 N.C. 798, 175 S.E. 299.

The procedure as to taking exceptions, bringing them forward in the assignments of error, and preserving them as required by Rules 19 (3), 21 and 28 of the Rules of Practice in the Supreme Court, 221 N.C. 554, 558 and 562, is set forth in detail in *Rawls v. Lupton,* 193 N.C. 428, 137 S.E. 175. The distinctive character of assignments of error, as distinguished from exceptions, is pointed out by *Barnhill, C. J.,* in *Dobias v. White,* 240 N.C. 680, 83 S.E. 2d 785. As *Denny, J.,* expressed it in *S. v. Britt,* 225 N.C. 364, 34 S.E. 2d 408: "An argument unsupported by

exception is as ineffective as an exception without argument or citation of authority. *Curlee v. Scales,* 223 N.C. 788, 28 S.E. 2d 576."

The jury, upon which primary responsibility for decision rested, rejected defendant's plea and evidence of self-defense. The verdict and judgment, no prejudicial error appearing, will be upheld.

No error.