State v. McIlwain

═══════════

STATE OF NORTH CAROLINA v. WALTER S. McILWAIN

No. 67

(Filed 13 October 1971)

1. Criminal Law § 161— appeal as an exception to the judgment — question presented

An appeal itself is an exception to the judgment of the court and presents the question whether error appears on the face of the record proper.

2. Criminal Law § 161— record proper on its face — requisites

The Supreme Court holds that no error appeared on the face of the record in a homicide case, where the indictment was in proper form, the court was properly constituted, and the sentence was supported by the verdict and was within the limits authorized by statute.

3. Homicide § 14— homicide case — presumption of unlawful killing and malice

Evidence that the proximate cause of death was a wound in the victim's head from a pistol bullet intentionally fired at the victim

by the defendant raises a presumption of an unlawful killing and a presumption of malice sufficient to support a conviction of murder in the second degree.

APPEAL by defendant from *Hasty, J.,* at the 15 February 1971 Session of HENDERSON, heard prior to determination by the Court of Appeals.

By an indictment, proper in form, the defendant was charged with the murder of Marshall Walker. Before the trial commenced, the solicitor announced in open court that he would not seek a conviction of murder in the first degree, but would place the defendant on trial for murder in the second degree or manslaughter as the evidence might warrant. The defendant entered a plea of not guilty. The jury returned a verdict of guilty of murder in the second degree and the defendant was sentenced to a term of 18 to 20 years in the State prison.

The defendant gave notice of appeal but the case on appeal contains no assignment of error, and the record shows no objection and no exception to any ruling of the trial court. The judge's charge to the jury is not set forth in the record, which contains the following statement:

"The Judge proceeded to charge the jury. The charge was adequate, fair to the defendant, and complied with the law insofar as counsel is able to ascertain and inasmuch as no exception was taken to the charge of the Judge, the charge is not summarized herein, but the record is submitted with the case on appeal for the court's information."

The direct evidence for the State consisted of the testimony of the brother of the deceased and Dr. Kenneth LaTourette, who performed an autopsy. The brother's testimony was to the effect that he went into a pool hall in the City of Hendersonville at about 8 p.m. on 1 August 1970. There he saw his brother (the deceased), the defendant, the defendant's wife and Melvin Bangor, who subsequently testified that he is the brother (presumably the half-brother) of the defendant. There were numerous other people in the pool hall. As the witness entered, the deceased and Bangor suddenly started "fighting with their bare hands." The defendant "all of a sudden" came out of a small room in the back of the building, walked toward the deceased, pulled out a pistol and began shooting at the deceased, whose

back was turned to the defendant. The deceased fell to the floor. Bangor, who was not shot, fell on top of the deceased. The defendant then came around the pool table, stooped over the deceased and shot him two more times. The deceased was then lying on the floor and Bangor was holding him down. The first two bullets, fired from a distance of eight to ten feet, entered his back. The third bullet entered his head at the temple. The witness saw no knife, gun or other weapon anywhere about his brother's body. He heard no words between the deceased and Bangor and knows of no argument between them, or between the deceased and the defendant prior to the commencement of the fight. Dr. LaTourette testified that the deceased had four gunshot wounds, two in the back, one in the head and one in the left hand. The cause of death was the bullet wound in the head.

The defendant testified in his own behalf and Bangor was also a witness for him. Their testimony was to the effect that, as Bangor was dancing with the wife of the defendant, the deceased came over to them and pushed Bangor, who thereupon told the defendant's wife to go get the defendant so that they could leave. The deceased then pushed Bangor up against the wall, pulled out a gun and struck Bangor in the face with it. When the defendant entered the room, pursuant to his wife's request, he saw his brother and the deceased fighting. He could not then see what the deceased had in his hand. In the course of the struggle, the defendant and his wife were kicked by the deceased, the wife trying to pull Bangor back from the fight. The defendant shot the deceased three or four times when they were "real close together," having tried to get his brother and his wife out of the pool room, which he was unable to do because the deceased would not let them go. The deceased was not on the floor when the defendant shot him. The defendant had had a number of beers to drink that day but was not drunk. He told SBI Agent Crisco "what happened down there to the best of his knowledge," his constitutional rights having been explained to him.

The State called in rebuttal Chief of Police Powers, SBI Agent Crisco and Eugene Logan, who was playing pool at a nearby table at the time of the occurrence. Logan testified that he heard two shots fired after the deceased fell and while the defendant was kneeling over him. He paid little attention to the fight between the deceased and Bangor as "he had an im-

portant game going on" at the time, but the deceased and Bangor were pushing each other and he saw "some fists flying from both parties."

The testimony of the police officers was to the effect that the defendant having left the pool hall in a taxi, an officer went to his home and arrested him without a warrant on the charge of assault with a deadly weapon with intent to kill. The arresting officer did not talk to him and the defendant made no statement to that officer. The defendant had a swollen and bleeding eye and was taken to the hospital where he received medical attention at the emergency room and was brought to the jail at approximately 2 a.m. on the morning of 2 August. At his request he was permitted to talk for 35 to 40 minutes to some individual by telephone. Thereafter, he was "warned of his rights and asked if he understood them," which he said that he did. He then talked to the officers without objection, telling them that he had gone over to where the deceased and Bangor were fighting, heard the deceased threaten to kick his wife, saw him kick her and was kicked in the eye himself, whereupon he pulled his gun and shot the deceased four times while they were only inches apart. He said he had heard a shot before going out into the room where the struggle was in progress. Bangor also told the officers that the deceased had fired a pistol at him but missed.

*Attorney General Morgan and Staff Attorney Blackburn for the State.*

*Crowell & Crowell by O. B. Crowell, Jr., for defendant.*

LAKE, Justice.

[1, 2] The defendant having assigned no error and having stated in his brief that he is aware of none, the only question presented by his appeal, which, itself, is an exception to the judgment of the court, *State v. Sutton,* 268 N.C. 165, 150 S.E. 2d 50; *State v. Williams,* 235 N.C. 429, 70 S.E. 2d 1, is whether error appears on the face of the record proper. *State v. Hewett,* 270 N.C. 348, 154 S.E. 2d 476; *State v. Williams,* 268 N.C. 295, 150 S.E. 2d 447. No such error appears, the indictment being in proper form, the court being properly constituted and the sentence being supported by the verdict and being within the limits authorized by the statute. G.S. 14-17. It is conceded that the charge of the court to the jury, which is not brought for-

ward in the record, was correct. "Error may not be predicated on the possibility of error in a charge which was not reported and as to which no error is now assigned. The presumption is that the court charged the jury properly as to the law applicable to all phases of the evidence." *State v. Cruse,* 238 N.C. 53, 59, 76 S.E. 2d 320.

[3] The evidence is ample to show the proximate cause of death was a wound in the head from a pistol bullet intentionally fired at the deceased by the defendant. Upon this evidence the law raises a presumption of an unlawful killing and a presumption of malice sufficient to support a conviction of murder in the second degree. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

No error.