STATE OF NORTH CAROLINA v. WILLIAM BRUCE LAWSON

No. 6917SC438

(Filed 27 August 1969)

1. Homicide § 21— sufficiency of circumstantial evidence

In this prosecution for second degree murder or manslaughter, the trial court properly submitted the case to the jury where the State's evidence tended to show that sounds of cursing and shots came from the direction of an automobile which had stopped in front of a residence, that the automobile drove down a private road near the residence and more shots were heard, that shortly thereafter deceased was found lying on the ground behind the automobile and defendant was found standing near the automobile with a rifle under his arm, that cartridges fired from the rifle were found at the crime scene, that deceased had been shot in the back of the head at close range and had fallen over the trunk of the car to the ground, that the direction of the bullet was from the back of the neck toward the rear of the mouth, with a furrow cut along the top of the tongue, and that defendant stated that if deceased was dead defendant's life was over.

2. Homicide § 21— circumstantial evidence

Circumstantial evidence may be used in homicide cases to establish the cause of death and the criminal agency.

3. Homicide § 21— general motion for nonsuit — evidence sufficient for conviction of any one degree of homicide

Where the evidence is sufficient to support conviction of any one of the degrees of homicide, a general motion to nonsuit is properly overruled.

4. Homicide § 21— sufficiency of circumstantial evidence as to cause of death

In this homicide prosecution, there was ample circumstantial evidence

for the jury to find that deceased died as the result of a bullet wound in the back of his neck.

**5. Criminal Law § 113; Homicide § 23— instructions — contention that State's witnesses ought not to be believed**

   In this homicide prosecution, statement in the charge that defendant contended "that you ought not to believe what the State's witnesses say about him" *is held* not erroneous when read in context.

**6. Homicide § 30— failure to submit issue of involuntary manslaughter**

   In this prosecution for second degree murder or manslaughter, the trial court did not err in failing to instruct the jury that they could return a verdict of guilty of involuntary manslaughter, where all of the evidence tended to show an intentional shooting of deceased by defendant, and there was no evidence tending to show that the death of deceased was caused by culpable negligence or was the result of misadventure.

APPEAL by defendant from *Collier, J.,* 5 May 1969 Criminal Session of Superior Court held in SURRY County.

Defendant was tried upon a bill of indictment charging him with the murder of Wesley Slaughter Cook (Cook). The solicitor announced upon calling the case for trial that he would try the defendant for murder in the second degree or manslaughter.

Upon defendant's plea of not guilty, trial was by jury. The verdict was "guilty of manslaughter." Judgment of the court was that the defendant be imprisoned in the State Prison for not less than sixteen (16) nor more than twenty (20) years.

From the judgment imposed, the defendant appealed assigning error.

*Attorney General Robert Morgan and Assistant Attorney General Bernard A. Harrell for the State.*

*Badgett & Calaway by Richard G. Badgett for the defendant appellant.*

MALLARD, C.J.

The defendant offered no evidence. The State's evidence is summarized as follows, except where quoted. On 16 November 1968 Mr. and Mrs. Willie Baker lived on their farm situated at the end of an unpaved road in Surry County. Mr. Baker was sick. After dark that night a car drove up in their yard. Mrs. Baker went to the front door, turned on lights, saw a dark car with somebody standing on the right side and heard some bad language being used. After going back in the house, she heard two shots. Shortly thereafter the car

drove down a private drive to their chicken house. Mrs. Baker called Allen Lane, who operated a store about three miles from the Baker residence, and told him "somebody was down here drunk and shooting and cussing and asked him to come up." Mrs. Baker heard more shots "out by the chicken house." The chicken house was about seven hundred feet from the Baker home.

Mr. Lane, after talking with Mrs. Baker, called the sheriff's department at approximately 9:00 p.m. and then went to the Baker farm where he met Deputy Sheriff Manuel fifteen or twenty minutes later. It had been raining, the ground was wet. The deputy sheriff, accompanied by Lane and Wayne Baker, a nephew of Mr. and Mrs. Willie Baker, went to the top of the hill where the chicken house was and saw the defendant standing there fifteen or thirty feet from a black Chevrolet automobile. The automobile was mired in the mud and its motor was running. Cook, bleeding from the mouth and a wound in the back of his head, was on the ground behind the automobile with his face ten to twelve inches from one of the automobile's two exhaust pipes. There was a slight smoke circle in the hair of the deceased. The coroner testified:

> "He (Cook) was lying on his left side, his body twisted, face downward. There was blood covering the back of his head and the back portion of the shoulders. There was a bullet hole in the back of his head near the base of his skull. On the trunk of the car there was blood and moisture. There was an upper central incisor denture tooth. There were smears in the moisture and blood from the top of the lid back down toward the ground. I had the body moved to the funeral home. I further examined the body at Moody Funeral Home and found that he had been wearing an upper acrylic denture which was shattered into several pieces. He had partly swallowed some of the fragments. There was a furrow cut along the top of the tongue and there was a cut place on the lower lip just right of center. Mr. Beal took some forceps and brought out the denture from the deceased throat. I probed the wound to determine the direction of the bullet. The direction from the back of the neck was toward the rear of the mouth. The wound was between the second and third cervical vertebrae. I found no bullet in the body. There was blood in the mouth, blood on the trunk lid, the exhaust pipe of the car, and on the body and on the ground where the body was found."

David Beal testified that:

> "On November of last year he was special agent for the SBI.

He examined the body of Wesley Cook at the funeral home. The body and head were extremely bloody. He sponged it off. He found three-quarters of an inch laceration at the base of the skull on the left-hand side. There were around and in the wound fragments of unburned powder. He found a laceration along the upper portion of the tongue that extended from one and one half to two inches in a furrow and a laceration from the right side of the lower lip which protruded outward. He found part of a plate that had been broken into pieces in the throat below the tongue level. He found small fragments of lead located in the plate. These fragments were too small to use for comparison."

Cook, who was 55 years of age, had been in good health at about 6:00 p.m. on that date when he told his wife before she left home to go to Mount Airy that Bruce Lawson wanted him to go hunting in order to try out a dog Lawson had.

The defendant, who had the odor of alcohol on him, had a .22 calibre automatic rifle under his arm and "a yellow cat buttoned up in his shirt, and the cat's head was sticking out between the buttons." At the request of the deputy sheriff, the defendant gave him the rifle which had "two live bullets in it."

The defendant told the deputy sheriff that they were coon hunting. There was a dog in the trunk of the car, but it "was not a coon dog."

The next morning in the area of five or ten feet from where the rear of the car was the deputy sheriff found four or five cartridges that had been fired by the automatic rifle the defendant had under his arm when arrested.

Wayne Baker testified:

"The Sheriff asked the defendant to see the gun, and he handed it to him. He asked him if he had anything else on him, and he said, 'Yes, I have got the knife, the same one that you took before.' We all walked to the car, and the defendant said, 'Why, he can't be dead; he can't be dead,' and he said that probably half a dozen times. Then after a short period, the defendant said, 'Well, if he is dead, I guess my life is over with.' There was blood and a tooth on the trunk lid of the car. The blood was about two-thirds of the way up the trunk lid, and it looked to me like the fellow slumped forward on the trunk lid and just slid down. I remained until the doctor arrived. The Sheriff told the fellow, 'I am going to have to hold you.' "

Deputy Sheriff Manuel testified:

"I put the handcuffs on the defendant and told him I would
have to take him to jail. Doctor Thomas came to the scene. We
put the defendant in jail that night in Mount Airy and searched
him. I asked him if he had a knife and he said the one I took
from him before. I searched him twice and found no other
weapons."

The next morning on 17 November 1968, acting upon informa-
tion given to them, the officers searched the defendant again there
in the jail and found a fully loaded 22 revolver in a holster under
his belt. The defendant told them that he had obtained possession
of the gun that day.

[1]    Defendant contends that the court committed error in over-
ruling his motion for nonsuit. The applicable rule is stated in *State
v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969), as follows:

"On such a motion the evidence must be considered in the
light most favorable to the State, and the State is entitled to
every reasonable intendment thereon and every reasonable in-
ference therefrom."

[2]    The evidence in the case is circumstantial. However, the rule
is that circumstantial evidence is satisfactory in proof of matters
of the gravest moment. The correct rule in respect to the sufficiency
of circumstantial evidence is set forth in *State v. Stephens,* 244 N.C.
380, 93 S.E. 2d 431 (1955). This rule has been quoted with approval
in many cases, among which are *State v. Lowther,* 265 N.C. 315, 144
S.E. 2d 64 (1965), and *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741
(1967). Circumstantial evidence may be used in homicide cases to
establish the cause of death and the criminal agency. 41 C.J.S.,
Homicide, § 312; 4 Strong, N.C. Index 2d, Homicide, § 21.

[3]    There is another rule which provides that:

"Where the evidence is sufficient to support conviction of any
one of the degrees of homicide, a general motion to nonsuit is
properly refused." 4 Strong, N.C. Index 2d, Homicide, § 21;
*State v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402 (1956).

There are many circumstances in this case which tend reasonably
to show that the deceased was intentionally shot by the defendant
with the .22 calibre rifle he gave to the officer. Among these is the
circumstance of the lapse of several minutes from the time the shots
were heard by Mrs. Baker at the chicken house until the officers ar-
rived during which the defendant apparently made no effort to as-

sist the deceased while he was lying there on the wet ground near the exhaust pipe.

**[1]** Considering all the State's evidence in the light most favorable to it, and, as required, giving it the benefit of every reasonable and legitimate inference to be drawn therefrom, we are of the opinion and so hold that there was sufficient evidence of the defendant's guilt of murder in the second degree and manslaughter to require the submission of the case to the jury. The trial judge did not commit error in overruling the motion for nonsuit.

**[4]** We do not agree with defendant's contention that the cause of death was not shown because the deceased may have been asphyxiated, strangled to death, died from a heart attack or other cause. The evidence shows that the deceased was a 55-year old man in good health. There was ample circumstantial evidence for the jury to find, as they did, that the deceased died as the result of the bullet wound in the back of his neck.

**[5]** Defendant assigns as error a portion of the charge of the court with respect to the contentions of the defendant. In his brief the words complained of are "that you ought not to believe what the State's witnesses say about him." The defendant thus complains of a portion of a sentence. The entire sentence in which these words appear is:

> "On the other hand the defendant says and contends that you ought not to find him guilty from all of the evidence in the case and that you ought not to believe what the State's witnesses say about him and that at the very least you ought to have a reasonable doubt in your minds as to his guilt and that you ought to acquit him."

Defendant cites no authority in support of this contention. There is nothing in the record to indicate that the defendant made any objection to this statement of contentions before the case was submitted to the jury. In *State v. Saunders*, 245 N.C. 338, 95 S.E. 2d 876 (1957), Justice Higgins speaking for the Court said:

> "As a general rule, objections to the statement of the contentions and to the review of the evidence must be made before the jury retires or they are deemed to have been waived."

See also *State v. Lambe*, 232 N.C. 570, 61 S.E. 2d 608 (1950), and *State v. Shackleford*, 232 N.C. 299, 59 S.E. 2d 825 (1950). When read in context, we do not think the challenged portion of the charge relating to the contentions is erroneous, and if it was error, we do not think it was prejudicial to the defendant.

**[6]**   The defendant also assigns as error the failure of the court to instruct the jury they could return a verdict of guilty of involuntary manslaughter.

> "Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the commission of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time, or resulting from the culpably negligent omission to perform a legal duty." 4 Strong, N.C. Index 2d, Homicide, § 6, p. 198.

There is no evidence in the record tending to show that the death of the deceased was caused by culpable negligence or was the result of misadventure. The facts all point the other way. The cursing, the shooting of the rifle, the location of the automobile on the private road at night, the location of the wound on the back of the neck, the unburned powder in and around the wound and slight smoke circle in the hair, together with the size and the angle or range of the wound in the body, the empty cartridges found near the body that had been fired by the rifle that the witness saw in the defendant's hand, the tooth and blood on the trunk of the car, the blood on the body of the deceased and on the ground nearby, the position of the deceased behind the automobile, the failure of the defendant to offer any assistance to the deceased, and the spontaneous statement of the defendant that the deceased was not dead but that if he was dead his (defendant's) life was "over with" all tend reasonably to show an intentional shooting of the deceased at close range by the defendant with the rifle while the rifle was held to his shoulder in a horizontal or shooting position.

We have considered all assignments of error presented on this record. No prejudicial error is made to appear.

No error.

MORRIS and HEDRICK, JJ., concur.