STATE OF NORTH CAROLINA v. GEORGE BRIGGS

No. 7317SC811

(Filed 9 January 1974)

1. Homicide § 21— second degree murder — intentional shooting

The State's evidence was sufficient for the jury in a second degree murder case where it tended to show that defendant intentionally fired a pistol at the victim and that the victim died as a proximate result thereof.

2. Homicide § 24— presumptions — use of "intentionally killed"

The trial court in a second degree murder case did not comment on the evidence in instructing the jury that the law raises two pre-

---

State v. Briggs

---

sumptions if the State proves beyond a reasonable doubt that defendant "intentionally killed" the victim.

3. **Criminal Law § 112— charge on reasonable doubt — ingenuity of counsel**

Trial court's instruction that a reasonable doubt is not a "doubt suggested by the ingenuity of counsel or your own ingenuity" was not erroneous.

4. **Criminal Law § 113— instruction that defendant gave conflicting testimony**

Defendant was not prejudiced by the court's instruction that defendant made conflicting statements on the witness stand, although it would have been better for the court to have recapitulated the evidence and left the question of conflicts to the jury.

5. **Homicide § 27— failure to instruct on involuntary manslaughter**

The trial court in a murder case did not err in failing to instruct on the lesser included offense of involuntary manslaughter where the uncontradicted testimony tended to show that the shooting of the victim was intentional.

6. **Homicide § 27— instructions on "heat of passion"**

There was ample evidence in this homicide case to support the court's instruction on "heat of passion."

ON *certiorari* to review a trial before *Kivett, Judge,* 19 March 1973 Session of CASWELL County Superior Court.

Defendant was charged in a valid bill of indictment with first-degree murder of James E. Foster, Jr. Defendant waived preliminary hearing and was tried in Superior Court.

The State's evidence tended to show that Deputy Sheriff Wagstaff, who investigated the shooting, arrived at the home of defendant's uncle, a Mr. Pullum, in response to a call. He observed defendant on the premises a few minutes after he arrived; and he asked him, "Were you here when all this happened?" Defendant's response was, "Oh, man, I did it." On the premises Deputy Wagstaff saw Mrs. Ossie Dean Slade's car with deceased's pickup truck parked directly behind it. The headlights of both vehicles were burning. The right front window of defendant's car was broken out, broken glass was on the inside of the car, and a broken bottle was on the seat. Deputy Sheriff Willis confirmed the testimony of Deputy Wagstaff.

Dr. Page Hudson, Chief Medical Examiner for the State, testified that he examined the body of the deceased and found four gunshot wounds. One was a superficial puncture wound in the left eyebrow, and the other three were entrance-type

gunshot wounds. One was in the back side of the left forearm, one was in the rear of the left shoulder, and one was in the left side of the chest. All of the entrance wounds were made with .32-caliber bullets. It was Dr. Hudson's opinion that the cause of death was internal hemorrhaging from the gunshot wound in the left side of the chest.

Dr. Thomas Webster testified that on the night of the shooting, he was at the home of his parents, directly across the road from the Pullum home. He saw two vehicles turn into the driveway adjacent to the Pullum home. Shortly thereafter, he heard two or three shots fired, and, after a brief pause, he heard two or three more.

Gay Ganoway testified that she lived two or three hundred yards from the Pullum residence, and, on the night of the shooting, defendant came to her house and asked to use the phone. She overheard defendant say he had killed someone. Defendant left, and when he returned to use the phone again, Gay Ganoway overheard him ask someone if he could "come back to the house" and "was he dead."

At the close of State's evidence, defendant's motion for nonsuit was denied.

Defendant thereupon took the stand, and his testimony was as follows. On the night of the shooting he was parked with Ossie Dean Slade in her car near an abandoned laundromat. The deceased, James Foster, drove into the area and spotted the car. He backed up in his pickup truck, and defendant and Mrs. Slade left with Mrs. Slade driving. Foster followed the car through town about three times, driving "right on the bumper." Mrs. Slade told defendant that Foster wanted to see her, but that she "didn't want to be bothered with him." After driving through town the third time, Mrs. Slade got on Highway 86 and drove to the Pullum residence where she pulled into the driveway with Foster right behind her. Foster got out of his truck with three or four bottles in his hand, came to the passenger side where defendant was seated, beat the glass out of the window, and forced his upper body inside the car. Defendant reached in the glove compartment, pulled out a pistol, and shot Foster about three times. After the third shot, Foster raised up and said he was going to kill defendant and headed back to his truck.

At the close of his evidence, defendant renewed his motion for nonsuit, and it was again denied. Defendant was found guilty by the jury of second-degree murder. From the entry and signing of judgment, defendant appeals.

*Attorney General Morgan, by Deputy Attorney General White and Assistant Attorney General Byrd, for the State.*

*Ronald M. Price and Price, Osborne, Johnson and Blackwell, by D. Floyd Osborne, for petitioners.*

MORRIS, Judge.

Defendant first assigns error to the denial of his motions for judgment as of nonsuit at the close of the State's evidence and at the close of his evidence. The denial of these motions presents the question of the sufficiency of the evidence on the entire record to go to the jury. *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971) ; *State v. Stevens,* 9 N.C. App. 665, 177 S.E. 2d 339 (1970). We, therefore, will consider the sufficiency of the evidence on the entire record.

[1] The test for the sufficiency of the evidence to withstand the motion for nonsuit is well established. If the evidence, considered in the light most favorable to the State, giving the State the benefit of all inferences and resolving all inconsistencies in favor of the State, tends to establish guilt, then the denial of the motion for nonsuit is proper. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). The evidence in the case *sub judice* tends to establish that defendant intentionally fired the pistol at deceased and that deceased died as a proximate result thereof. The intentional use of a deadly weapon which proximately results in death gives rise to the presumption that the killing was malicious. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). This inference is sufficient to take the State's case to the jury, since an intentional killing with malice is murder in the second degree. *Id.* The motion for nonsuit was properly denied.

[2] Defendant next contends that the court's instructions to the jury constitute a comment on the evidence in contravention of G.S. 1-180. We do not agree. The court did not err in the use of the term "intentionally killed." The portion of the charge excepted to is as follows:

"I charge that for you to find the defendant guilty of second degree murder, the State must prove two things beyond

a reasonable doubt. First, that the defendant intentionally and without justification or excuse and with malice, shot James E. Foster, Jr., with a deadly weapon. Malice is not only hatred, ill will or spite, as it is ordinarily understood. To be sure that is malice, but it also means that condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another, which proximately results in his death without just cause, excuse or justification. . . .

If the State proves beyond a reasonable doubt that the defendant intentionally killed James E. Foster, Jr., with a deadly weapon, or intentionally inflicted a wound upon James E. Foster, Jr., with a deadly weapon, that proximately caused his death, the law raises two presumptions. First, that the killing was unlawful and second, that it was done with malice; then nothing else appearing, the defendant would be guilty of murder in the second degree."

These instructions fairly and accurately define the law of second-degree murder. *State v. Duboise, supra.* Defendant would have us apply *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971), to hold that the term "intentionally killed" in the above-quoted portion of the charge violated G.S. 1-180. Such is not the holding of *Rummage.* The Supreme Court in *Rummage* held that the *frequent* and *interchangeable* use of the terms "intentional killing" and "intentional shooting" constituted error in a *manslaughter* instruction inasmuch as it pointed to a finding of malice. The portion of the charge excepted to is in an instruction on second-degree murder, and in no manner can it be deemed prejudicial.

[3] There is no error in the following instruction on reasonable doubt to which defendant excepts:

"It is not a vain, imaginary or fanciful or mere possible doubt, because everything related to human affairs is open to some possible or imaginary doubt, nor is it a doubt suggested by the ingenuity of counsel or your own ingenuity, not legitimately warranted by the evidence."

The Supreme Court approved this language in *State v. Hammonds,* 241 N.C. 226, 232, 85 S.E. 2d 133 (1954), quoting *State v. Steele,* 190 N.C. 506, 130 S.E. 308 (1925).

" 'We suggest, in addition to the definitions heretofore approved, for its practical terms, the following: "A reason-

able doubt, as that term is employed in the administration of criminal law, is an honest, substantial misgiving, generated by the insufficiency of the proof; an insufficiency which fails to convince your judgment and conscience, and satisfy your reason as to the guilt of the accused." It is not "a doubt suggested by the ingenuity of counsel, or by your own ingenuity, not legitimately warranted by the testimony, or one born of mericful inclination or disposition to permit the defendant to escape the penalty of the law, or one prompted by sympathy for him or those connected with him." *Jackson, J.* in *U. S. v. Harper,* 33 Fed. 471.' "

[4] Defendant has failed to show prejudice in the court's instruction to the effect that defendant made a conflicting statement on the witness stand. There were in fact conflicting statements as to that particular in defendant's testimony. This defendant concedes. While it would have been better for the court to have recapitulated the evidence and left the question of conflicts to the jury, we do not consider this error sufficiently prejudicial to warrant a new trial.

[5] Defendant further assigns error to the failure of the court to instruct on the lesser included offense of involuntary manslaughter. There is no merit to this assignment of error inasmuch as the uncontradicted testimony tends to show that the shooting was intentional.

> "Involuntary manslaughter is the unintentional killing of a human being without malice, premeditation or deliberation, which results from the performance of an unlawful act not amounting to a felony, or not naturally dangerous to human life; or from the performance of a lawful act in a culpably negligent way; or from the culpable omission to perform some legal duty. *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485; *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155." *State v. Rummage, supra,* at 55.

Where there is no evidence that a homicide was caused by culpable negligence of defendant or by a misadventure, there is no duty on the part of the trial court to instruct on involuntary manslaughter. *State v. Lawson,* 6 N.C. App. 1, 169 S.E. 2d 265 (1969).

[6] Defendant's final assignment of error is to the court's instructing the jury on "heat of passion," since, he contends,

there was no evidence that deceased was killed in the heat of passion. It is true that an instruction on "heat of passion" is inappropriate when not supported by the evidence. *State v. Rummage, supra.* In the case *sub judice* there is ample evidence from which the jury could infer that deceased was killed in the heat of passion.

No error.

Chief Judge BROCK and Judge CARSON concur.