STATE OF NORTH CAROLINA v. RUSSELL WAGNER

No. 807SC689

(Filed 6 January 1981)

1. **Infants § 17— statement to officers prior to arrest — admissibility**

Statements given by defendant to investigating officers prior to his arrest were admissible, since no fact brought out on voir dire examination indicated that defendant was not clearly informed of his rights or that he did not understand his rights and did not waive his right to remain silent, to have the advice and presence of a lawyer, or to have a parent present, and defendant gave his statement freely and voluntarily without fear and without promise of favor.

2. **Homicide §§ 21.7, 21.9— insufficiency of evidence of second degree murder and voluntary manslaughter — sufficiency of evidence of involuntary manslaughter**

Evidence was insufficient to be submitted to the jury on charges of second degree murder and voluntary manslaughter but was sufficient to be submitted on the charge of involuntary manslaughter where the evidence tended to show that defendant, a 16 year old boy, shot his 10 year old sister, but in showing the events leading up to and preceding the death of the sister, .the State relied entirely on voluntary statements of defendant to the effect that he and his sister were fussing; defendant was "messing around with a shotgun"; and the gun accidentally went off.

3. **Criminal Law § 118— contentions of parties — jury instructions prejudicial**

The trial court's instructions to the jury were prejudicial where the trial court did not summarize the evidence as required by G.S. 15A-1232, but instead consistently and without exception stated the contentions of the parties, and in stating the State's contentions, included matters that were not in evidence.

APPEAL by defendant from *Small, Judge.* Judgment entered 8 February 1980 in Superior Court, WILSON County. Heard in the Court of Appeals 3 December 1980.

Defendant, a sixteen year old boy, was indicted for the murder of his ten year old sister. At arraignment, the State announced that it was seeking a verdict of second degree murder or any lesser degree. Defendant entered a plea of not guilty. He was convicted of voluntary manslaughter, and from judgment entered on the verdict, defendant has appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Grayson G. Kelley, for the State.*

*Farris, Thomas & Farris, P.A., by Robert A. Farris, for defendant appellant.*

WELLS, Judge.

Defendant has assigned the following as error: the failure of the trial court to order certain testimony stricken from the record; the admission of defendant's pre-arrest statement to police officers; the trial court's refusal to allow certain testimony on cross examination of a witness for the State and a witness for the defendant; errors in the court's instruction to the jury; and the failure of the trial court to allow defendant's motion to dismiss at the close of the State's evidence and at the close of all the evidence. We will discuss three of the assignments.

[1]  We hold that the defendant's statements given to the investigating officers prior to his arrest were admissible. No facts brought out on *voir dire* examination indicated that defendant was not clearly informed of his rights, or that he did not understand his rights, and did not waive his rights to remain silent, to have the advice and presence of a lawyer, or to have a parent present. Defendant gave his statement freely and voluntarily without fear and without promise of favor.

[2]  We hold that there was insufficient evidence to take this case to the jury on second degree murder and voluntary manslaughter. Our Supreme Court has had many occasions to define the various degrees of homicide prevailing under the law of our state. An examination of these definitions is a helpful starting point in our analysis of this case. We find *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971) and *State v. Wilkerson,* 295 N.C. 559, 247 S.E. 2d 905 (1978) helpful. We quote from *Wrenn:*

> *Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G. S. 14-17; State v. Lamm,* 232 N.C. 402, 61 S.E. 2d 188 (1950). Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Benge,* 272 N.C. 261, 158 S.E. 2d 70 (1967). Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, *and without intention to kill or inflict serious bodily injury. State v. Foust, supra; State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485 (1959); *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155

(1930).

*State v. Wrenn, supra,* at 681-82, 185 S.E. 2d at 132, *quoted with approval in State v. Wilkerson, supra,* at 577-78, 247 S.E. 2d at 915.

Justice Bobbitt commenting further on these elements in *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322 (1955), said:

> When the killing with a deadly weapon is admitted or established, two presumptions arise: (1) that the killing was unlawful; (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree. In *State v. Gregory,* 203 N.C. 528, 166 S.E. 387, where the defense was that an *accidental* discharge of the shotgun caused the death of the deceased, it was stated that the presumptions arise only when there is an *intentional killing* with a deadly weapon; and since the *Gregory* case it has been often stated that these presumptions arise only when there is an intentional killing with a deadly weapon. But the expression, *intentional killing,* is not used in the sense that a specific intent to *kill* must be admitted or established. The sense of the expression is that the presumptions arise when the defendant *intentionally assaults* another with a deadly weapon and thereby proximately causes the death of the person assaulted. [Citations omitted.] A specific intent *to kill,* while a necessary constituent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder or manslaughter. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions. [Citation omitted.] The presumptions do not arise if an instrument, which is *per se* or may be a deadly weapon, is not intentionally used as a weapon, *e.g.,* from an accidental discharge of a shotgun.

*State v. Gordon, supra,* at 358-59, 85 S.E. 2d at 323-24 *quoted with approval in State v. Wrenn, supra,* at 682-83, 185 S.E. 2d 133.

In showing the events leading up to and preceding the tragic death of Melissa Wagner, the State relied entirely on the voluntary statements of the defendant. The State's witnesses testified that defendant's first statement in its entirety, was as follows:

> "I didn't go to school today. Missy came home about three-thirty or twenty-five after three. We started play fussing about the tea in the refrigerator. She said, 'You drunk up all the tea'.

I said, 'Yeah, but there is some lemonade on the counter.'

I went in the kitchen and we started messing around just playing. We were messing around with the shotgun. She walked in the living room. I had the gun up at the ceiling. I didn't think it was loaded. I didn't know the hammer was pulled back. We were just messing and I had it pointed at the living room. I held it loose. I didn't see her in the living room. *The gun accidentally went off and that's what happened.* I laid the gun down and went over to her and knelt down. Then I put the gun back up. Then I went to Mrs. Lamm's and called the police."

(Emphasis ours.)

Defendant's second statement in its entirety, as testified to by the State's witness, was as follows:

"I was sitting in the living room when she came home from school, between twenty-five after three and twenty-five to four. She looked in the refrigerator and said, 'You drank all the tea'. I said, 'Yeah'. I said, 'There is some lemonade on the counter'.

She said, 'I don't see no lemonade'.

I said, 'It's on the counter by the sink'.

She said, 'Did you make it?'
I said, 'Yeah'.

Then she said, 'If you made it, I'll get some water'.

Then I went in the kitchen and started messing with the gun. I got it from propped up against the kitchen window. I had it up and she said, 'It ain't loaded'. I said, 'Yes it is', and showed her, opened the gun. *I didn't know it was cocked.* Then she went in the living room by the fan or the television. I was standing watching TV from the kitchen door. She walked back to the chair and she must have turned around to fix her skirt or something *and that's when it went off.* It was under my arm pointed towards the living room, towards the TV. I think the Guiding Light was going off. I put the gun down on the table and went over and knelt down and felt of her neck to see if there was a pulse. I must have took the shell out and when I went outside, I ran around like a chicken with its head cut off, threw the shell in the cornfield, went back through the house and put the gun back in the gun cabinet. Then

I went to Mrs. Lamm's across the street and called the police. I called the ambulance two times and nobody answered. Mrs. Lamm had the number written in the phone book."

(Emphasis ours.)

The State introduced no other evidence which would tend to throw a different light on the circumstances of the homicide *as those circumstances relate to defendant's intent to fire the weapon at all, much less at his sister*. Defendant's statements pertaining to the discharge of the weapon tend to show an accidental firing and tend to exculpate defendant on the elements of an intentional use of the weapon, entitling him to a dismissal of the charge of second degree murder and voluntary manslaughter. "When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements." *State v. Bolin,* 281 N.C. 415, 424, 189 S.E. 2d 235, 241 (1972). *See also State v. Hankerson,* 288 N.C. 632, 637, 220 S.E. 2d 575, 580 (1975), *reversed on other grounds,* 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977). *Compare State v. Bright,* 237 N.C. 475, 75 S.E. 2d 407 (1953).

Our review of the record shows that the evidence was sufficient to take the case to the jury on the charge of involuntary manslaughter.

**[3]** While not dispositive of this case, one other assignment of error needs to be discussed. In his charge to the jury, the trial court did not summarize the evidence as required by G.S. 15A-1232, but instead consistently and without exception stated the contentions of the parties. In stating the State's contentions, he included matters that were not in evidence. As pointed out by this Court in *State v. Moore,* 31 N.C. App. 536, 541-42, 230 S.E. 2d 184, 186-87 (1976), such instructions are prejudicial, and in this case entitle defendant to a new trial.

For the reasons stated, we hold that defendant is entitled to a

New Trial.

Judges VAUGHN and MARTIN (Robert) concur.