STATE OF NORTH CAROLINA v. JERRY WAYNE TURNAGE

No. 893SC1323

(Filed 4 September 1990)

**Homicide § 21.7 (NCI3d)— second degree murder—evidence insufficient**

The evidence of second degree murder was not sufficient where statements by defendant only a few hours after the incident indicate that the shooting was accidental. Defendant's statement, offered by the State, was wholly exculpatory and was not contradicted or shown to be false by any other facts or circumstances in evidence; indeed, the evidence offered by

the State more closely corroborates defendant's statement than contradicts it.

**Am Jur 2d, Homicide §§ 53, 112, 253, 337, 425.**

Judge GREENE dissenting.

APPEAL by defendant from *Reid (David E.)*, *Judge*. Judgment entered 6 April 1989 in Superior Court, CRAVEN County. Heard in the Court of Appeals 20 August 1990.

Defendant was charged in a proper bill of indictment with murder in violation of G.S. 14-17. The jury found defendant guilty of second degree murder.

The evidence presented by the State tends to show the following: Defendant, Jerry Wayne Turnage, and the victim, Carolyn B. Turnage, were married but separated about three months before the victim's death. The victim and her daughter, Tracy, age 16, lived in the home previously occupied by the couple at 2105 Waters Street in New Bern. Defendant lived with his sister in a mobile home at 504 Howell Road in New Bern.

On the night before the shooting, Tracy spent the night with defendant, her adoptive father, on Howell Road. Defendant asked Tracy that night what she would do if something happened to him and to her mother. Tracy noticed a gun in a holster on the floor by the couch that night and the following morning.

After returning to the home on Waters Street that morning, Tracy heard her mother call defendant and ask him to come to the house on Waters Street to fix the washing machine. Her mother instructed Tracy (who stayed home from school that day) to call her if defendant took anything. Defendant fixed the washing machine and took a picture from the wall with him when he left. Tracy called her mother at work and told her of defendant's actions.

The victim worked at Raleigh Federal Savings Bank in New Bern. On 17 November 1988 she left work at about 10:30 to 10:45 visibly upset. She had been crying. Sometime during that morning, the victim had called defendant and left the following message on his answering machine: "I want my goddamn pictures back and you better stay out of the house because if you want your ass nailed, it is going to be nailed. I am tired of you fucking around."

Carolyn Turnage arrived at the mobile home around 11:00 to 11:15 and asked defendant's sister if she could speak with defendant in private. She appeared to defendant's sister to be tense or angry. The victim and defendant went into defendant's bedroom. After a few minutes, he came out of the bedroom, got the separation agreement he had received in the mail that morning, and returned to the room. A few minutes later, defendant's sister heard a gunshot. Defendant came out of the bedroom, crying and upset, and said, "Oh my God! I have killed my wife. It was an accident. Call an ambulance." Emergency medical personnel arriving shortly after 11:30 found defendant kneeling beside the victim's body pressing a compress to her head.

Officers from the Craven County Sheriff's Department arrived at the trailer at 11:37 a.m., before the ambulance. They entered the trailer after being told by defendant's sister that her brother's wife had been shot. The officers placed defendant in their car and advised him of his *Miranda* rights. While defendant remained in the car, several officers entered the trailer and examined the bedroom. Defendant subsequently was transported to the Sheriff's Department. He was advised a second time of his *Miranda* rights, then dictated and signed a statement relating the following: The victim had come to the mobile home and asked to speak with him privately. In the bedroom, they began arguing over the separation papers. The victim got mad and said she was going to take everything defendant had including his father's gun which was lying on the bed. She grabbed the gun. They struggled over it and she kicked him in the groin. They both fell. The gun fired as they fell, shooting the victim in the head. Defendant yelled for his sister to call an ambulance. He moved the victim in an attempt to get her to his truck and to the hospital. Defendant tried to resuscitate the victim and applied a compress to the wound. According to defendant's statement, the victim initially fell on or near the telephone, the bed, and some barbells lying beside the bed.

The bedroom was photographed and evidence was collected immediately after the victim's body was removed. A .22 calibre pistol was found on the floor where the body had been. The gun's safety mechanism was off. A cartridge casing was found on the bed. Blood was found near the telephone, on the barbells, and on and around the window. A white tee-shirt and a gun holster were on the floor near the victim's feet, and the separation agreement lay on the bed.

According to defendant's account of the shooting made after he signed the written statement, while grappling over the gun, the couple stood up from the bed where they were sitting. The victim kicked defendant in the groin. Both parties fell backwards and the gun discharged.

Experts testified that significant amounts of lead residue were found on the victim's hands and small amounts of powder residue from the gun were found on defendant's hands. No fingerprints of value were found on the gun or the holster. The gun and its safety mechanism were in proper working order and did not misfire when tested. The gun was at least two feet from the victim's head when it fired. The bullet entered the left side of the victim's head and travelled slightly forward toward the front of the skull, and downward.

Defendant did not testify but offered the testimony of his sister and witnesses as to his good character. He also offered evidence tending to show that the gun had misfired on at least one previous occasion.

The jury found defendant guilty of second degree murder and he appealed from a judgment imposing a prison sentence of twenty years.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James Peeler Smith, for the State.*

*David P. Voerman for defendant, appellant.*

HEDRICK, Chief Judge.

We consider only the question of whether the evidence, when considered in the light most favorable to the State, is sufficient to withstand defendant's motion for judgment as of nonsuit.

Defendant in this case was convicted of second degree murder in the death of his wife. "Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Hutchins*, 303 N.C. 321, 346, 279 S.E.2d 788, 803 (1981). An essential element of second degree murder is the intent to inflict an injury that results in death. Thus, "to convict a defendant of murder in the second degree, the State must prove that the defendant intentionally inflicted the wound which caused the death of the deceased." *State v. Williams*, 235

N.C. 752, 753, 71 S.E.2d 138, 139 (1952). Relying largely on statements made by defendant to various law enforcement officials and on expert testimony concerning the firing of the gun, the State in this case attempted to show that defendant intentionally shot his wife in the head, causing her death.

Statements made by defendant only a few hours after the incident on 17 November 1988 indicate that the shooting was accidental. "When evidence introduced by the State consists of exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by those statements." *State v. Meadlock*, 95 N.C. App. 146, 149, 381 S.E.2d 805, 806 (1989). *See also State v. Bolin*, 281 N.C. 415, 189 S.E.2d 235 (1972); *State v. Wagner*, 50 N.C. App. 286, 273 S.E.2d 33 (1981). "The introduction in evidence by the State of a statement made by defendant which may tend to exculpate him, does not prevent the State from showing that the facts concerning the homicide were different from what the defendant said about them." *State v. Bolin*, 281 N.C. 415, 425, 189 S.E.2d 235, 241-42 (1972). In this case, the State failed to show that the shooting did not correspond to defendant's statement.

The statement of defendant, offered into evidence in this case by the State, is wholly exculpatory and is not contradicted or shown to be false by any other facts or circumstances in evidence. The testimony of the ballistics experts and the medical examiner does not contradict the statements of defendant in any significant way. Indeed, the evidence offered by the State more closely corroborates defendant's statement than contradicts it.

We hold the evidence in this case is not sufficient to permit the jury to find that defendant intentionally shot his wife with a .22 calibre pistol causing her death. The case of *State v. Bright*, 237 N.C. 475, 75 S.E.2d 407 (1953), is distinguishable. There, the Court said, "[t]here was evidence . . . that admittedly the defendant's hand was on the trigger when the pistol was discharged." *Bright* at 478, 75 S.E.2d at 408. Here, the exact words of defendant in his written statement, relied upon by the State, are as follows:

> She got mad and said she was going to take everything I had down to my last screw, my business; everything. My dad's gun was laying on the bed and she said she was even going to take it and grabbed it. I tried to grab it away from her and we stood up. About the same time I was trying to get

STATE v. TURNAGE

[100 N.C. App. 234 (1990)]

the gun away from her, she kicked me and I fell backwards and as I was falling backwards, I heard the gun go off.

No construction of the evidence in the present case will yield an inference that defendant's hand was on the trigger or even that defendant had the gun or any part of it in his hand or in his control at any time immediately preceding the discharge of the weapon causing his wife's death. The evidence here gives rise only to speculation, and the judgment must be reversed.

Reversed.

Judge ARNOLD concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's conclusion that the evidence offered by the State does not contradict the defendant's statement in any significant way. I believe the State's circumstantial evidence does contradict the defendant's statement and that reasonable minds might accept the evidence as adequate to support a conclusion that the defendant intended to inflict an injury on his wife which resulted in her death. *See State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 651-52 (1982) (motion to dismiss must be denied if substantial evidence exists of each element of the crime and that defendant was perpetrator of the offense).

Specifically, the State offered the following competent evidence: that the bullet entered the victim's head on the left side, traveled downward, and slightly forward from the back of the head to the front; that there was gunshot residue on the palm and back of the left hand of the victim and on the palm of the right hand of the victim; that no gunshot residue was found in the area of the wound itself; that the defendant was a hunter aware of correct gun safety and that the only loaded weapon found on the defendant's premises after the killing had the safety on; that the weapon involved in the killing was tested and it was determined that the safety device functioned properly and the weapon did not discharge when struck against the floor; and that approximately two weeks before the victim was killed, the daughter heard a scream coming

from the victim's bedroom and upon observation noticed her mother on the bed with the defendant standing over her and choking her.

The evidence in this case is very similar to the evidence offered by the State in a voluntary manslaughter case, *State v. Bright*, 237 N.C. 475, 75 S.E.2d 407 (1953). In *Bright*, the State offered the statement of the defendant that the killing was an accident. The Court held that the State's other evidence showing "the absence of powder burns, the location and direction of the fatal wound, the conduct of the defendant, and his statement that he and the deceased were 'scuffling' at the time the pistol was fired" was sufficient to support a reasonable inference that the shooting was intentional and required submission of the issue to the jury. *Id.* at 478, 75 S.E.2d at 408. Likewise, here the trial court was correct in denying the defendant's motion to dismiss and in submitting the issue to the jury. As the State argues, a jury could reasonably infer from the evidence that the weapon that killed the victim had the safety on and the defendant intentionally released the safety; that the victim was seated on the bed and that the defendant intentionally discharged the weapon while he was standing; and that the hands of the victim were in a position parallel to the path of the bullet and not on the weapon at the time of its discharge.

As I find no prejudicial error in the remaining assignments of error raised by the defendant, I would affirm the conviction of second-degree murder.